MARTHA  A.  SITTON  AND  HER  HUSBAND  V.  SHIPP  ET  AL.,
PLAINTIFFS  IN  ERROR.

1. **Specific Performance**: STATUTE OF FRAUDS; EVIDENCE.  When acts of part performance and casual statements of a deceased person are the sole proof relied on to establish a contract with the deceased for the conveyance of land, in order to take the case out of the statute of frauds, and authorize a court to decree specific performance against the heirs, the acts and statements should be such as would be inconsistent with any other contract than the one alleged.  The court should be well satisfied of the existence and character of the agreement, and will always look to the substantial justice of the case.

2. **Case Adjudged.**  Plaintiffs, the daughter and son-in-law, sued the other heirs of Mrs. R., deceased, upon the following contract alleged to have been entered into between her and plaintiffs: "That in consideration that plaintiffs would abandon their own home and move with their family into the house of said Mrs. R., and take charge of and support and maintain her during her life, and provide her a home, and take care of and properly keep such articles of personal property, horses, stock, &c., as she might desire, she would sell, transfer and convey said land by a good and sufficient deed in fee" to her said daughter, the plaintiff.  The facts, as shown by the evidence were, that about seven years before the death of Mrs. R., plaintiffs, at her request, left their own farm and went to live with her on her farm which adjoined theirs, and was more fertile and had a better house on it.  They continued to live together amicably till her death.  During the whole time she paid the taxes, and supplied herself with dry goods and some groceries.  She also made three successive wills, each of which contained dispositions of the farm.  Plaintiffs were present when they were made, but raised no objections, asserted no contract for the land, and never demanded a deed.  They made some inconsiderable improvements, but on the whole the house and farm were allowed to deteriorate, There was also evidence of statements made by deceased to witnesses to the effect that she had given, or that she intended to give the farm to plaintiffs.  Two of the wills devised it to her daughter, the plaintiff, absolutely; the last also devised it to her, but subject to the payment of considerable legacies.  There was no direct proof of the contract sued on.  *Held*, that it was not established.

3. **Witness.**  When one of the parties to a contract is dead, the other is no more competent as a witness to prove acts of part performance under the contract than to prove the contract itself.

*Error to Lincoln Circuit Court.*—Hon. W. W. Edwards, Judge.

*Dryden & Dryden* with *Norton & Martin* for plaintiffs in error.

*Wagner, Dyer & Emmons* for defendants in error.

Napton, J.—There has been, of late years, but little diversity of opinion in regard to the principles upon which courts of equity decree a specific performance of a parol contract to convey land. The difficulty has been in applying these principles to a given case, or rather, more frequently, in ascertaining the facts upon which the interposition of the court is proposed. Where there has been possession taken by one having no title, with the consent of the owner, the necessary inference is, that such possession is in conformity to some contract between the owner and the party taking possession. In some cases the mere act of taking possession may indicate the contract under which it is taken; but in most cases the act does not of itself establish the character of the contract under which possession is acquired. The usual order of introducing evidence is, however, reversed in bills for a specific performance, and the plaintiff is allowed first, to show his possession and the circumstances attending it, in order to raise a presumption of some contract, but this contract must be ultimately proved, unless the possession alone proves that it is only consistent with the contract claimed, and that no other hypothesis would be able to account for it.

In this case, the plaintiff, Mrs. Sitton, was the daughter of Mrs. Robertson, the owner of the tract of land in dispute, and the defendants are another daughter and two grandchildren by a deceased daughter. The plaintiffs, Mr. Sitton and his wife, in 1866, were living on a tract of land adjoining to the one owned and occupied by Mrs. R. In

that year they moved into Mrs. Robertson's house, and Mr. Sitton took charge of the farm, comprising about thirty acres, in the tract of one hundred acres, and fitted up a room for Mrs. Robertson in the house, and they all lived together after this until the death of Mrs. R., in 1873. The plaintiffs claimed, in their petition, that this occupancy was under a contract with Mrs. Robertson, which they assert to have been as follows: "that in consideration that plaintiffs would abandon their own home and move with their family into the house of said Mrs. R. and take charge of and support and maintain her during her life, and provide her a home and take care of and properly keep such articles of personal property, horses, stock, &c., as she might desire from time to time to keep and hold in her possession, she would sell, transfer and convey by a good and sufficient deed of conveyance in fee simple absolute said land to the said Martha Ann Sitton; that she, the said Mrs. R., in consideration of the premises, so soon as she might thereafter be physically able to do so, would go to the town of Troy in said county, and execute in due form of law a deed of conveyance of said one hundred acres of land to said Martha Ann and her assigns forever, conveying all the right, title and interest which the said Mrs. R. had in and to the said lot." The plaintiffs then proceed to aver: "That these plaintiffs accepted and agreed to the terms and stipulations of the contract and agreement so entered into by and between the said Julia Ann Robertson and these plaintiffs; that thereupon the said plaintiffs, in the month of April, 1866, broke up housekeeping at their own house, and removed with their entire family, goods, chattels, property and effects of every character and description, to the home and premises of the said Julia Ann Robertson on said lot. That the said Julia Ann then and there, in consideration of the premises and in pursuance of said contract and agreement * * * surrendered and delivered up to the plaintiffs full and complete possession and control of the said lot of land with

all and singular the fixtures, rights, privileges and appurtenances belonging to the same; that the plaintiffs then and there, in consideration of said contract ' * * * and relying upon the promises and good faith of said Julia Ann, and fully believing that she would faithfully do and perform all that she had promised and agreed in and about the conveyance of said premises to said Martha Ann, entered upon the said premises and took full and complete possession of the same, and have continued to hold, occupy, use and enjoy the same ever since, and still hold the same, in all respects· holding the same as their own property; that in pursuance of said contract plaintiffs took the said Julia A. into their family as a member thereof; that plaintiffs at great labor, trouble and expense to themselves, repaired and fitted up a part of the dwelling house * * * and set apart the same for the exclusive use of said Julia Ann, and that she continued to live with plaintiffs until her death; that plaintiffs took care of her, provided all things necessary for her support, comfort and maintenance, and in so far as they were able, provided for all her wants and necessities. * * * They further say that, in addition to the work and labor and money expended in and about the repairing and fitting up a portion of the dwelling house as aforesaid, the plaintiffs renewed and kept in good repair the entire fencing around and upon said premises; that they made permanent and valuable improvements upon said premises, and at a large outlay of money and labor set out upon the premises, and have since * * * attended to and preserved in good order and condition, an apple orchard of * * * 600 trees. They say said Julia Ann did not keep and perform said agreement * * * but on the contrary * * * she in her life time wholly failed and neglected to make the said deed of conveyance * * * to said Martha A.; as she had by the terms and stipulations of said agreement bound and obligated herself to do. They further say that said Julia Ann, on the 15th day of May, 1867, did, as she

at the time stated for the purpose of complying with said agreement and investing the said Martha A. with the full title to the said premises, to take effect after her death, make and execute an instrument in writing, duly signed, sealed and witnessed as required by law; purporting to be her last will and testament, and delivered the same to these plaintiffs, by which said instrument she devised to the said Martha A. Sitton absolutely said lot of 100 acres. The said instrument has been in plaintiffs' possession continuously ever since the date of its execution. They say that they are informed and believe that the said Julia Ann did, but a short time previous to her death, without informing plaintiffs of her intentions in that regard and without calling upon them to deliver up to her for cancellation the said instrument, undertake to make another will, and to publish and declare the same to be her last will and testament; that by the terms of the said last mentioned instrument the sum of 1000 dollars is directed to be paid by the said Martha A. Sitton to the said Elmira T. Shipp, and the sum of 500 dollars in like manner to be paid to the said Wm. R. Anderson and the said Elmira M. Brown, and subject to the charge of the payment of said several sums of money as aforesaid she devised all of said lot to the said Ann Sitton; and in the event that the said Martha A. should fail or refuse to pay the said sums of money, the executor of the said will is required and directed to sell off from the east end of the said tract so much as may be necessary to pay said sums of money. Plaintiffs say they have faithfully kept and performed all of the terms and stipulations of said agreement on their part to be observed, and by reason of the premises plaintiffs are in equity and good conscience entitled to a decree as against the defendants for a specific execution of the contract so made with said Julia * * * and they pray that the court will make a decree vesting the title in fee simple absolute to the said lot * * * in plaintiff Martha Ann, and her

heirs and assigns forever, and grant plaintiffs general relief."

The answer denied the contract. The testimony on the trial does not exhibit any very material discrepancies. The principal facts seem to be undisputed. That the plaintiffs moved into Mrs. Robertson's house in 1866, from their previous residence on an adjoining tract of land, and that they continued to live there till Mrs. R.'s death, and that Mrs. R. was kindly treated, and that there was no controversy of any kind between them, are clearly proved or conceded. It appears also that Mrs. R. made, during their residence at her house three wills, two in the spring of 1867, and the last in 1873, as stated in the petition. By the two first made, the land was absolutely devised to Mrs. Sitton; by the third, made shortly before her death, the land was also devised to Mrs. Sitton, but subject to a charge of one thousand dollars, to be paid to her sister Mrs. Shipp, and five hundred dollars to each of her grandsons. There is no dispute and it was clearly proved that Mrs. Robertson up to her death paid the taxes on this land. It also appears that she bought dry-goods to the amount of $150.00 annually, and groceries to the amount of $5.00.

These undisputed facts, do not necessarily lead to the conclusion that the agreement under which plaintiffs moved to Mrs. R.'s house was substantially the one alleged in the petition. There must be satisfactory proof, not merely of some agreement, leading to acts of part performance, in pursuance of which they are done, but sufficient to establish the particular agreement alleged. The proof on this point must be satisfactory.

1. SPECIFIC PERFORMANCE: statute of frauds: evidence.

To make the mere acts of part performance effective to take the agreement out of the Statute of Frauds, the acts must be such as cannot be explained consistently with any other agreement than the one alleged, if they are relied on as the sole proof of the contract. Chancellor Kent in

his Commentaries, says : " The agreement, to be enforced, must be clearly proved as charged in the bill, and the acts of part performance must unequivocally appear to relate to the identical contract set up." And in his opinion in *Phillips v. Thompson*, (1 John. Ch. 131,) he observes: "It is well settled that if a party sets up part performance to take a parol contract out of the statute, he must show acts unequivocally referring to and resulting from that agreement, such as the party would not have done unless on account of that very agreement, and with a direct view to its performance, and the agreement set up must appear to be the same with the one partly performed. There must be no equivocation or uncertainty in the case." The plaintiff in that case was denied relief, because "he had failed in satisfactory proof of his agreement, and in showing such acts of performance as were necessary to be imputed to that agreement, and could not reasonably be imputed to any other."

There is in this case no direct proof of any agreement whatever between Mrs. R. and the plaintiffs. The only proof, in addition to the acts of the parties, consists of casual declarations of Mrs. R., related by the persons to whom they were made. These declarations refer either to Mrs. R.'s intentions in the future, or to past acts of hers, and those acts and intentions are nowise inconsistent with a complete retention of property in herself There is nothing especially to indicate, either in her acts or expressions, or in the acts of plaintiffs, any such contract as is alleged in the petition. Mrs. Campbell stated that sometime in the spring of 1867, Mrs. R. told her " she was going to give the farm to Martha Ann, (Mrs. Sitton.)" In the course of her cross-examination, she said that Mrs. R. stated, " she had given the farm to Martha Ann." Now, it will be observed, that about this time Mrs. R. had made a will to this effect. Mrs. McCausland stated that she saw Mrs. R. in March, 1866, and heard her say, " she had given the land to Martha Ann and Lawrence (Sitton,) that they

were to move there and take care of her all her life." Mrs. Pollard testified that about the time Sitton moved on the place Mrs. R. told her that " she intended to give the place to Martha Ann to take care of her all her life." Another witness stated that he heard Mrs. R. say that " she had given the place to Martha Ann to take care of her for her life-time." Such was substantially the testimony of a fourth witness and a fifth.

There is no reason to discredit the truth of every fact these witnesses stated. The well established facts of the case, however are, that the plaintiffs were living on a tract of land adjoining that of Mrs. Robertson, of very inferior quality as to fertility and improvements, to the one occupied by Mrs. Robertson; that the rental value of Mrs. R.'s land was from $200.00 to $250.00 per annum; that after their removal, Mrs. R. continued to pay taxes on the land and supplied herself with clothing and with groceries; that no improvements were made on Mrs. R.'s place, except in repairing a fence and planting out some apple trees; that nothing was ever said to Mrs. R. about a deed, that Mrs. R. made three wills, not secretly, but with the knowledge and in the presence of the plaintiffs; and by the last one gave the plaintiffs what she estimated as twice as much as she gave to her other children. These facts are not inconsistent with Mrs. Robertson's retention of title, both legal and equitable. The plaintiffs were subjected to no inconvenience by moving; they continued to cultivate their own land adjoining, and at the same time got a more comfortable house for a residence, and a more fertile tract of land, without paying any rent. The expense of supporting Mrs. R. when she paid the taxes, bought her own clothing, and probably more than sufficient for herself, and paid out a small sum for groceries, must have been merely nominal, certainly far less than the rental value of the place. The various wills of Mrs. R. indicated her understanding that she was proprietor. The declarations and acts of the plaintiffs during these seven years, also indi-

cated that they relied solely on her bounty, and never at any time asserted a contract·for a deed, or ever demanded or requested one. They were both present at the execution of her last will, and fully apprised of its contents, but made no objection, nor spoke of any contract which would prevent its execution. Courts of equity, when called on to decree a specific performance of an alleged parol agreement, are asked to exercise an extraordinary jurisdiction. They must be well satisfied of the existence and character of the agreement, and will always look to the substantial justice of the case. They must be satisfied that any resistance to the completion of the agreement alleged and proved, would operate as a fraud on the other party. It is obvious in this case, that the plaintiffs did not rely on the agreement they now allege, and did not make any improvements or expend any money on the place, on the faith of such agreement. On the contrary, the evidence shows that the place was allowed to deteriorate, and was not in so good a condition when Mrs. R. died, as it was when they moved there. With the exception of planting some apple trees, which cost perhaps $200.00, the house and farm were suffered to go to decay, and the plaintiff, Mr. Sitton, was heard to regret that he ever planted out these trees. That Mrs. R. intended to give this land to Mrs. Sitton, there is no doubt; but upon what 'terms she would do so, was a matter for her consideration. In short, her payment of taxes during the seven years the plaintiffs lived with her without objections, is pretty conclusive evidence that both she and the plaintiffs regarded her as owner of the land. The plaintiff, Mr. Sitton, in fact concedes this in his testimony.

A question was made in regard to the admissibility of Mr. Sitton's testimony. He was not allowed by the court 3. WITNESS. to speak of the contract, but merely stated facts tending to prove part performance. The question is of no practical importance in this case, as we have considered the case as presented by all the evidence, including

that of Mr. Sitton. I observe, however, that in *Amonett v. Montague* (63 Mo. 205), a case in which I did not sit, the court sanctioned Judge Wagner's conclusion in *Loker v. Davis* (47 Mo. 140), that the proviso in our statute (Wag. Stat. p. 1372, Sec. 1) was only intended to apply to cases where the litigation was between the party offered as a witness, and the representatives of the deceased, in reference to some contract or *other matter*, to which the deceased and the party offered as a witness, were parties. This was precisely the case here. The controversy was between the witness and the representatives of the party deceased, in regard to a contract alleged, and the evidence admitted, though not in regard to the contract, was in regard to acts of part performance under it. This evidence was, under these decisions, clearly incompetent. Judgment reversed.

REVERSED.