RING v. JAMISON, *Administrator, Appellant.*

1. **Ratification of Infant's Contract.** The validity of a promise by an adult to pay a debt incurred by him during his minority, is not affected by the fact that at the time of making the promise he believed himself legally liable to pay the debt, or by the fact that during his minority his curator kept him supplied with all necessarie's

2. **Limitation against Running Account.** When it is fairly inferable from the conduct of the parties to a running account while it is accruing, that the whole is to be regarded as one account, none of the items are barred by the statute of limitations, unless all are *following Madison Coal Co. v. Steamboat Colona,* 36 *Mo.* 446 *and other cases).*

3. **Incompetency of Surviving party as a Witness.** Where one of the original parties to the contract or cause of action in issue and on trial, is dead, the other is not a competent witness, even for the purpose of rebutting testimony given on behalf of the adverse party to show admissions made by himself since the death of the deceased.

*Appeal from St. Louis Court of Appeals.*

The decision of that court is reported in 2 Mo. App. 584.

At the trial a witness for the defendant testified that after the death of Peter Lindell, witness and Ring had a conversation, in which witness told Ring that Peter Lindell had said that Ring owed him $20,000. Ring, in reply, said, no, that he, Ring, only owed Peter Lindell $700, etc. In rebuttal, plaintiff offered himself as a witness and testified as to the conversation which took place be-

tween himself and witness, after Peter Lindell's death. Counsel for defendant objected to plaintiff as a witness on the ground of incompetency. The court overruled the objection and allowed plaintiff to testify as to said conversation. This is the testimony spoken of in the opinion of the court as having been given by the plaintiff in his own behalf.

*Cline, Jamison & Day* for appellant.

1. The account must be mutual, and have items on both sides, for the last item to draw after it those preceding it, and take the same out of the operation of the statute of limitations. *Davis v. Smith* 4 Me. 337; Buller's N. P. 149, 150; *Miller v. Colwell,* 2 South. 577; *Coster v. Murray,* 5 John. Ch. 522; *Tucker v. Ives,* 6 Cowen 193; *Kimball v. Brown,* 7 Wend. 322; *Didier v. Davison,* 2 Barb. Ch. 477; *Hallock v. Losee,* 1 Sandf. 220; *Palmer v. New York,* 2 Sandf. 318; *Coggswell v. Dolliver,* 2 Mass. 217, 221; *Gold v. Whitcomb,* 14 Pick. 188; *Prematt v. Runyan,* 12 Ind. 174; *Buntin v. Logow,* 1 Blackf. 373; *Knife v. Knife,* 2 Blackf. 340; *Todd v. Todd,* 15 Ala. 743; *Wilson v. Calvert,* 18 Ala. 274; *Price v. Upshaw,* 2 Humph. 142. *Penn's Admr. v. Watson,* 20 Mo. 13, was a case where there were mutual running accounts.

2. To constitute a ratification of an infant's contract a mere acknowledgement of indebtedness is insufficient. There must be a substantial promise to pay, with a knowledge of all the facts, and *with a deliberate purpose of assuming a liability from which he knows he is discharged by law. Baker v. Kennett,* 54 Mo. 92; *Highley v. Barron,* 49 Mo. 103; 1 Parsons on Contracts, (5th Ed.) 323; *Ford v. Phillips,* 1 Pick. 202; *Smith v. Mayo,* 9 Mass. 64; *Curtin v. Patton,* 11 S. & R. 305; *Harmer v. Killing,* 5 Esp. 102; *Brooks v. Galby,* 2 Hancock 34; *Hinsby v. Margarity,* 3 Barr 428.

*Laughlin & Cameron,* for respondent, filed no brief.

HENRY, J.—This cause originated in the probate court

of St. Louis county, on a demand presented for allowance by plaintiff, against the estate of Peter Lindell, deceased, for the sum of $7,727.75. The account was composed of forty-eight items, all of which were for money lent by plaintiff to or advanced for Peter Lindell, except an item of $350 for diamond studs alleged to have been sold by plaintiff to said Lindell. The money was paid and advanced by plaintiff at different times, from February 10th, 1868, to August 3rd, 1871. The account had no credits. In the probate court there was a judgment for defendant. Plaintiff appealed to the circuit court where he obtained a judgment for $7,707 and $\frac{25}{100}$. Defendant appealed to the general term, where the judgment was affirmed, from which he appealed to the Court of Appeals, where the judgment of the circuit court was affirmed, and he has brought it here by appeal. There was evidence which tended to prove that the account was correct. There was also evidence tending to show that it was not. The deceased, Peter Lindell, attained his majority 10th October, 1870, and all of the indebtedness, except $1,350 accrued, if at all, while he was a minor. He was a young man of wealth, who was unfortunately addicted to gaming, and some of his associations were evidently not of the most reputable character. Mr. Jamison, who administered on his estate, was also the curator of his property while a minor, and the evidence shows that young Lindell was frequently in possession of large sums of money, as much as $5,000 and $8,000 at a time; that he was prompt to pay his gaming debts, sometimes incurred at cards, and occasionally on bets on horse racing. One witness, a saloon keeper, testified that on the 22nd or 23rd of April, 1872, Peter Lindell stopped in front of his saloon in his buggy, and sent a colored man he had with him into the saloon for a glass of beer; that about that time, the plaintiff came into the saloon, and called Lindell in to take a glass of wine with him, and that plaintiff said to Lindell, "Pete, I am pretty near broke, I want to get some money." Lindell replied,

"I can't give you money now; you will have to wait a while; you will have to wait six months." And after some other conversation, in which Lindell admitted his indebtedness to plaintiff, the latter took from his pocket a book, in reply to a question by Lindell, "how much do I owe you, anyhow?"· added up the items in the book, showed it to Lindell, and asked him if it was right? And he said it was. Plaintiff wrote the amount on a card and handed it to Lindell. Witness said the amount was $7,727 $\frac{75}{100}$, and that Lindell agreed to pay it, with six per cent. interest, in six months. This was about eighteen months after Peter Lindell became of age.

The court, at the instance of plaintiff, gave an instruction in substance, that if, after he became of age, Lindell admitted his indebtedness to Ring in the aggregate amount of the several items of plaintiff's account, and agreed to pay it, then the jury should find for plaintiff, whatever they might find still due to plaintiff, with six per cent. interest. The following asked by defendant the court gave: That if Ring owed Lindell at the death of the latter, the jury should find for defendant; but refused the following: 1. The acknowledgement of indebtedness by Peter Lindell after he became of age, believing himself liable to pay the same, is not a ratification of the account sued upon, and if the account sued upon accrued while he was a minor, the verdict should be for defendant. 2. If any of the items of the account accrued more than five years before the commencement of the suit, plaintiff is not entitled to recover for such items. 3. If the curator of Peter Lindell supplied him with all necessaries while he was a minor, and the account sued upon accrued while he was a minor, then plaintiff cannot recover. 4. If his curator supplied him with all necessaries while he was a minor, and plaintiff loaned Peter Lindell money, or sold him diamonds, or other property while he was a minor, then plaintiff cannot recover.

If the instruction given by the court for plaintiff is

the law applicable to the facts which the plaintiff's testi-

**1. RATIFICATION OF INFANT'S CONTRACT.** mony tended to prove, the court did not err in refusing the first, third and fourth instructions asked by defendant. The first declared a contrary doctrine to that of the plaintiff's instruction, and the third and fourth declared in substance that plaintiff could not recover, although the jury should find that after Lindell became of age he acknowledged his indebtedness, and promised to pay it in six months with interest. We have no doubt that plaintiff's instruction correctly declares the law, and the opinion of the Court of Appeals is a very satisfactory elucidation of the law on that subject, and relieves us of the necessity of discussing the question. The court having properly given plaintiff's instruction, did not err in refusing the first, third and fourth asked by defendant.

The second instruction asked by defendant presents a question of more difficulty, because the weight of author-

**2. LIMITATION AGAINST RUNNING ACCOUNT.** ity is against the decisions of this court on that question. But our decisions have been acquiesced in for years, and no good results would be accomplished by reopening the question. They are to the effect that when the account sued on is a running account, and it is fairly inferable from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in case of a merchant's account against a customer, none of the items are barred by the statute unless all are. The Missouri cases are cited in the opinion of the Court of Appeals, and fully sustain that court in its conclusion. *Vito Viti v. Dixon*, 12 Mo. 480; *Steamboat v. Beehler*, 12 Mo. 477; *Madison Co. Coal Co. v. Steamboat Colona*, 36 Mo. 446; *Boylan v. Steamboat Victory*, 40 Mo. 250; *Finney v. Brant*, 19 Mo. 45. Other errors are assigned, but as they were considered, and in our opinion properly determined by the Court of Appeals, except one, we will pass them by without any remark, except that we concur in its opinion in regard to them.

Ring v. Jamison.

On the trial of this cause, the circuit court permitted plaintiff to testify in his own behalf. This under former decisions of this court, was error. In *Angell v. Hester*, 64 Mo. 142, this court said: "We take the true distinction to be, that where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party to such contract or cause of action, will not be permitted to testify to any fact which he would not have been permitted to testify to at common law; that when one of the parties is dead, the other party stands, in regard to testifying, precisely as if the statute allowing persons to testify (parties was intended) had not been enacted." The statute is in derogation of common law. If both parties to the contract or cause of action, are alive, they can testify as other witnesses, without any restrictions, except such as apply to other witnesses, but not so if one be dead. The substance of the provision is, that if both parties are alive, both may testify, but if one be dead, then the common law is in full force as to the competency of the survivor as a witness in his own favor. " The test of competency" (said Wells, J., in *Granger v. Bassett*, 98 Mass. 462,) " is the contract or cause of action in issue and on trial, not the fact to which the party is called to testify." The test given by the learned judge in *Granger v. Bassett*, we think a correct one, with the exception of those cases at common law in which a party could testify to certain facts and not generally, and if I do not understand the learned judge to hold that in Massachusetts, a party is not still competent to testify in those cases, whether the other party be dead or alive. *Coughlin v. Haenssler*, 50 Mo. 126; *Looker v. Davis*, 47 Mo. 145; *Amonett v. Montague et al.*, 63 Mo. 201; *Sitton v. Shipp*, 65 Mo. 297. All concurring, the judgment is reversed, and the cause remanded.

REVERSED.

*[Margin note: 3. INCOMPETENCY OF A SURVIVING PARTY AS A WITNESS]*