OF THE

# STATE OF MISSOURI,

AT THE

OCTOBER TERM, 1890.

(*Continued from Volume 103.*)

ROGERS *et al.* v. WOLFE, *Appellant.*

DIVISION ONE.

1. **Contract:** PART PERFORMANCE : EVIDENCE. The acts relied on to show part performance of a contract to convey land, to take it out of the statute of frauds, should be clear and definite and be referable exclusively to the contract, and the latter must be established by competent evidence to be clear, definite and unequivocal in all its terms.

2. ————: ————: ————. The evidence in this case reviewed and *held* not to meet the requirements of the foregoing rule.

3. ————: ————: HUSBAND AND WIFE: IMPROVEMENTS. A husband is bound to support and maintain his wife after marriage, and a promise to do so affords no consideration for a contract on her part to convey her lands to him, and such marriage will even cancel all claim on his part for improvements made on the land by him, under the alleged contract.

(1)

4. **Error**: WAIVER. A party not appealing cannot complain of error.

5. **Specific Performance**: PARTIES. The infant heirs of one charged to have agreed to convey land are necessary parties to an answer in ejectment setting up such contract and asking specific performance.

6. **Practice**: INFANTS: NEXT FRIEND. The trial court should appoint a next friend to protect the interests of such infants, and it is error not to do so.

*Appeal from Jasper Circuit Court.*—W. M. ROBINSON, ESQ., Special Judge.

AFFIRMED.

*W. H. Phelps* and *E. O. Brown* for appellant.

(1) Where one in pursuance of, and on the faith of, an oral promise of the owner, that he shall have a deed for land, has changed his condition, entered into the possession of the land, made valuable and permanent improvements, incurred obligations, paid taxes, and expended time, labor and money on account thereof, the case is taken out of the statute of frauds, and equity will compel a specific performance of such promise against the heirs of the promisor. *Sutton v. Haydon,* 62 Mo. 101; *West v. Bundy,* 78 Mo. 407; *Anderson v. Shockley,* 82 Mo. 250; *Hiatt v. Williams,* 72 Mo. 214; *Sharkey v. McDermott,* 91 Mo. 647; *Carney v. Carney,* 95 Mo. 353; *Daugherty v. Horsel,* 91 Mo. 161; *Bank v. Fife,* 95 Mo. 119; *Dozier v. Matson,* 94 Mo. 328. (2) Where, as in this case, there has been possession taken by one having no title, with the consent of the owner, the necessary inference is, that such possession is in conformity to some contract between the owner and the party taking possession. *Sitton v. Shipp,* 65 Mo. 298; *Franklin v. Truckerman,* 27 N. W. Rep. (Iowa) 759; *Despain v. Carter,* 21 Mo. 331. (3) Defendant took possession of the land in question as owner and his acts

Rogers v. Wolfe.

in taking possession and making improvements were such as cannot, rationally, be presumed to have been done had he not considered himself in that light. And the subsequent marriage of Eunice A. to the defendant does not raise a presumption against the contract claimed. The agreement for a deed may be upheld from any facts and circumstances which, in their nature, justify the inference of an understanding between the parties to that effect. *Koch v. Hebel*, 32 Mo. App. 103; 2 Story Eq. Jur., secs. 761, 762, 763; *Davenport v. Mason*, 15 Mass. 93. (4) The plaintiffs, Frank I. and Albert Bull, being minors at the time of the commencement of this action, and the rendition of judgment therein, and not having a guardian or next friend, had no standing in this court, and no legal capacity to sue. R. S., sec. 3469; *Robinson v. Hood*, 67 Mo. 660. The objection to plaintiffs' want of capacity was made by defendant's answer. (5) The trial court committed manifest error in permitting plaintiffs to read, in evidence, over defendant's objection, the record of suits commenced by the collector against E. Rogers *et al.* for delinquent taxes, and the payment of cost, and taxes in such case by F. Rogers. (6) The court below erred in refusing to permit defendant (who offered himself for a witness for that purpose) to deny and contradict certain statements attributed to him by the plaintiff, Alice Rogers, and witnesses, Sanders and Lazenby.

*Thomas & Hackney* for respondents.

(1) The rule is well settled that before specific performance of a parol agreement to convey lands will be decreed, the contract itself, in all its terms, must be clearly established by positive proof. *Underwood v. Underwood*, 48 Mo. 530; *Sitton v. Shipp*, 65 Mo. 302, 303, and cases cited; *Paris v. Haley*, 61 Mo. 459; *Taylor v. Williams*, 45 Mo. 83, 84; 1 Story Eq. Juris. [10 Ed.] sec. 764; *Cox v. Cox*, 29 Pa. St. 375; *Brewer*

*v. Wilson*, 17 N. J. Eq. 180; *Cooper v. Carlisle*, 17 N. J. Eq. 525; *Lobdell v. Lobdell*, 36 N. Y. 327; *Johnson v. Johnson*, 19 Iowa, 74.. And this proof must be beyond a reasonable doubt. *Berry v. Hartzell*, 91 Mo. 136, 137, and cases cited. (2) Appellant's evidence of the alleged contract and its terms consists wholly of loose declarations of his deceased wife, made, if at all, to persons in casual conversation from twelve to seventeen years before the trial. Evidence of such declarations is entitled to but little weight and should be cautiously received, and never amounts to positive proof of the facts claimed to have been admitted by those declarations. *Johnson v. Quarles*, 46 Mo. 427; *Underwood v. Underwood*, 48 Mo. 531; *Ringo v. Richardson*, 53 Mo. 385; *Woodford v. Stephens*, 51 Mo. 443; *Modrell v. Riddle*, 82 Mo. 36; *Berry v. Hartzell*, 91 Mo. 136; *Cooper v. Carlisle*, 17 N. J. Eq. 525. (3) Even though appellant and Mrs. Crum entered into the alleged contract in 1870, still their marriage one year afterwards wholly abrogated and extinguished the contract. Kelly on Cont. Mar. Wom., p. 20; 2 Kent, Com. [11 Ed.] top p. 107, side p. 129; 2 Story, Eq. Juris. [10 Ed.] sec. 1370; *Smiley v. Smiley*, 18 Ohio St. 543; *Long v. Kinney*, 49 Ind. 235. (4) The character of appellant's possession was insufficient to take the case out of the statute of frauds. During the first year appellant boarded with the owner of the land on the premises. After that time his possession was that of husband. When possession and part performance are relied on to establish the parol agreement, such possession and the acts done thereunder must be clearly referable to the contract, and inconsistent with any other agreement or relation than the one alleged. *Underwood v. Underwood*, 48 Mo. 529, 530; *Silton v. Shipp*, 65 Mo. 303; *Phillips v. Thompson*, 1 Johns. Ch. 131; 1 Story, Eq. Juris. [10 Ed.] sec. 764; Brown on St. Frauds [3 Ed.] secs. 454, 474; *Frye v. Shepler*, 7 Pa. St. 91; *Rankin v. Simpson*, 19 Pa. St. 471; s. c., 57 Am. Dec. 670; *McMurtrie v. Bennette*,

Rogers v. Wolfe.

1 Harr. (Mich.) 124; *Wible v. Wible*, 1 Grant, Cas. (Pa.) 406; *Blakeslee v. Blakeslee*, 22 Pa. St. 237.   In *Zimmerman v. Wengart*, 31 Pa. St. 405, the court affirms the above case and say that, where a party lets go his equities under which he entered, no chancellor will enforce specific performance.   Appellant never took possession of the land as owner.   There being a mixed possession the legal seizin followed the legal title.   Tyler on Eject. and Adv. Enj., p. 905; 3 Washburn, Real Prop. [ 3 Ed.] top p. 117, side p. 485, sec. 8; *Mather v. Church*, 8 Am. Dec. ( Pa.) 663.   (5)   Appellant was not entitled to any compensation for the improvements placed upon the premises after his marriage and before Mrs. Wolfe's death.   Where the husband makes improvements on his wife's lands during coverture, the law presumes that they are intended for her benefit and as a gift, and he cannot claim compensation from the wife's heirs for such improvements.   *Burleigh v. Coffin*, 2 Fost. ( N. H.) 118; s. c., 53 Am. Dec. 236; *Marable v. Jordan*, 5 Humph. ( Tenn.) 417; 42 Am. Dec. 441; *White v. Hildreth*, 32 Vt. 265; *Washburn v. Sproat*, 16 Mass. 449; *Robinson v. Huffman*, 15 B. Mon. 80; *Corning v. Fowler*, 24 Iowa, 584; Kelly, Cont. Mar. Wom., p. 86, and note 4; Schouler, Dom. Rel., pp. 165, 166; 1 Washb. Real Prop. [ 3 Ed.] top p. 318, sec. 20, side p. 281.   (6)   The plaintiffs, Frankie I. and Albert Bull, were unnecessary parties, so far as plaintiffs were concerned, their father, Harry Bull, being entitled to curtesy in the share of their deceased mother.   They became necessary parties only so far as the defendant was concerned when he filed his answer praying for equitable relief against them.   It was for the defendant and not the other plaintiffs to see that guardians or next friends were appointed for them.   Besides, the judgment having been in favor of the infants, it will not be reversed because the infants appeared by attorney. R. S. 1879, sec. 3582; *Robinson v. Hood*, 67 Mo. 661.

BRACE, J.—This action is ejectment, to recover possession of lots 3 and 4 of the northeast quarter of section 4, in township 29, range 30, in Jasper county. The answer sets up an equitable defense. The plaintiffs are the heirs at law of Eunice A. Wolfe, deceased, formerly Eunice A. Crum. The defendant was her husband when she died. She died seized of said land in fee. The defense set up in the answer is that, by a contract entered into in February, 1870, between the said Eunice A., who was then the widow of Edwin F. Crum, deceased, and the defendant, she agreed to execute a deed to him for the land in suit, in consideration of his agreement to take possession of the premises, cultivate and improve the same, pay off her debts, manage her business, and care for and maintain her during the balance of her life; that the defendant performed his part of said agreement, took possession of the land, made permanent and lasting improvements thereon of the value of $5,000, paid off the debts of the said Eunice A., managed her business, cared for and maintained her during her life; but that she died without having executed to defendant a deed for said premises, "wherefore defendant prays judgment for the specific performance of said agreement, and that plaintiffs convey to defendant said real estate, pursuant to said contract, and for all other proper relief."

The court found that the plaintiffs are the owners of the land and entitled to its possession; that the allegations of the answer as to a contract between the said Eunice A. and the defendant are untrue; that the defendant is entitled to the sum of $490 for improvements placed upon the said premises prior to the marriage of the said Eunice A. and the defendant; and that the monthly rents and profits are of the value of $30 per month; and rendered the following judgment and decree, from which the defendant appeals: "It is, therefore, considered and adjudged and decreed by the

Rogers v. Wolfe.

court that plaintiffs have and recover of the defendant the possession of said premises, together with the monthly rents and profits of said premises, from and after the date of the judgment, together with other costs, and that a writ of execution with a restitution clause issue therefor, provided, however, that plaintiffs pay to the defendant the said sum of $490, the value of said improvements, which said sum is made a special charge and lien upon said premises, and that, if the same is not paid on or before the fifteenth day of August, 1887, the clerk of this court issue a special execution therefor, and that the said land be sold to satisfy the same."

The answer admits that in February, 1870, Eunice A. Crum, widow as aforesaid, was the owner in fee and in possession of the premises sued for.

It appears from the evidence that, at that time, she was living upon the land, her family consisting of herself and a niece, Miss Alice Rogers, one of the plaintiffs, then aged about twelve years; that the land had a house upon it, in which she and her niece lived; that about one hundred acres of it was inclosed by a very indifferent fence; that there was a stable, a well and an orchard on the place, and a small portion of it had been broken, and that the remainder was raw prairie land; that the widow was taking boarders, and renting the land to others, and was thus making a living; that she had some household furniture, two horses and a wagon, three cows and five head of young cattle, and some farming implements; that, in the fall of 1869, the defendant appeared in the neighborhood, representing himself to be a bachelor, and a doctor, bringing with him a bunch of cattle, a yoke of oxen, and a team of horses; that in February, 1870, the defendant, his hired hand and his stock went to Mrs. Crum's to board, and thereafter it became his home and place of business. In the spring and summer of 1870, he seems to have been in control of the farm, except the tillable

land, which was rented to a man named Maxon, and is found repairing and making new fences and some other improvements, and thereafter continued in possession, managing and controlling the farm, and all outside affairs, in connection therewith, while Mrs. Crum continued in the control and management of the household affairs, assisted by her niece as before, until May, 1871, when the doctor and Mrs. Crum were married after which they still continued to live upon the place; the doctor farming and improving the place, and practicing his profession, and his wife managing the household affairs, until February 28, 1879, when she died.

On the sixth of May following, the defendant sent the following letter to Frederick Rogers, one of Mrs. Wolfe's heirs:

"CARTHAGE, Mo., May 6, '79.

'*Frederick Rogers.*

"DEAR SIR:—I am the husband of the late E. A. Wolfe. I will just say that I have a claim against the estate which the heirs will have to settle. As regards the Crums and Horace Rogers, I will tell you some other time. I am in possession and will hold the same on, as per contract, until settlement is made. Please answer soon and oblige        B. F. WOLFE."

The taxes on the land seem to have been promptly paid, up to the time of the death of Mrs. Wolfe, but by whom does not appear in the evidence. After her death the taxes became delinquent. The defendant employed attorneys, and through them caused suits to be instituted against the plaintiffs, as the heirs of his wife, for such taxes. The plaintiffs, however, paid these taxes afterwards, and he failed to get title in that way. Afterwards, on the fifteenth of August, 1885, the plaintiffs instituted this suit. On the thirteenth day of September, 1886, the defendant filed his second amended answer to plaintiffs' petition, setting up the defense hereinbefore stated, and, on the same day,

filed an application for a change of venue on the ground
of prejudice of the circuit judge.   His application was
sustained and W. M. Robinson, Esq., was thereupon,
by agreement of parties, selected as special judge to try
the case.   The case came on for trial before such special
judge on the third of December, following; was heard,
argued, submitted and taken under advisement until
the next term.   At the next term, on the twelfth of
April, 1887, the case was reopened on the motion of the
defendant, and he was permitted to introduce the evi-
dence of eight more witnesses.   The case was then again
argued, finally submitted and resulted in the judgment
and decree before recited.

The parol contract attempted to be set up in this
case is void by the statute of frauds.   The defendant
seeks to take it out of the statute by showing perform-
ance of the alleged agreement on his part.   In order to
accomplish this, however, by well-established rules of
equity laid down by Judge STORY, and which have fre-
quently received the sanction and approval of this court,
"it is not only indispensable that the acts done should
be clear and definite, and referable exclusively to the
contract, but that the contract should also be established
by competent proofs to be clear, definite and unequivo-
cal in all its terms.   If the terms are uncertain or ambig-
uous or not made out by satisfactory proofs, a specific
performance will not (as indeed upon principle it should
not) be decreed.   The reason would seem obvious
enough, for a court of equity ought not to act upon con-
jecture, and one of the most important objects of the
statute was to prevent the introduction of loose and
indeterminate proof of what ought to be established by
solemn written contracts."   1 Story, Eq. Jur., sec. 764;
*Berry v. Hartzell*, 91 Mo. 132; *Sitton v. Shipp*, 65 Mo.
297; *Paris v. Haley*, 61 Mo. 453; *Underwood v. Under-
wood*, 48 Mo. 527.

"There must be satisfactory proof not merely of
some agreement leading to acts of part performance, in

pursuance of which they are done, but sufficient to estab-
lish *the particular agreement* alleged. The proof of this
point must be ·satisfactory." *Sitton v. Shipp, supra.*
And this proof of the agreement should be "of so clear
and forcible a nature as to leave no room for reasonable
doubt in the mind of the chancellor hearing the
cause." *Railroad v. McCarty,* 97 Mo. 214. And there
must be like proof that the acts performed refer to and
result from that agreement, and are such as would not
have been done, "unless on account of that very agree-
ment and with a direct view to its performance."
"There must be no equivocation or uncertainty in the
case." 1 Johns. Ch. 131; *Sitton v. Shipp, supra ;*
*Emmel v. Hayes,* 102 Mo. 186; *Ells v. Railroad,* 51
Mo. 200.

Applying these rules to the case in hand, it is evi-
dent that the defendant failed to make out a case for a
decree for the conveyance of the land in question to him
by the heirs of Mrs. Wolfe. There is no direct proof
whatever of any agreement between Mrs. Wolfe and her
husband to convey him the land. Apart .from their
acts, as hereinbefore set · out, the only proof tending to
show any agreement at all between them, in regard to
the land, consisted, in the main, of casual remarks of
Mrs. Wolfe, made by her in narration of past occur-
rences, and fragments of conversation between her and
her husband, overheard by witnesses, who undertook to
testify to them years after they were made, when they
could not recollect her language, or the connection in
which it was used, and, at best, could but give impres-
sions or conclusions as to what she really did say or
mean. This evidence is vague, indefinite and, in many
particulars, contradictory, and falls far short of showing
satisfactorily a positive and definite agreement upon the
part of Mrs. Wolfe to execute an absolute deed to her
husband for the land for the considerations mentioned
in the petition. When all · this kind of evidence
introduced by plaintiff and defendant is taken into

consideration, in connection with the ascertained facts in the case, it can hardly be said that it is even probable that such a contract was made. If ever made, it must have been about the time stated in the petition,—February, 1870,—when the doctor and the widow had been acquainted with each other for a very short time; for directly thereafter defendant commenced the improvements which he claims were made under that contract.

That, under such circumstances, such a contract should have been made, is not reasonable. Mrs. Wolfe was a woman in good health, capable of maintaining herself. The only possible consideration she could get under such a contract was her maintenance. That she was then getting, by her work at her home on her farm, and just that, and no more, she was to continue to, and did in fact, get by the same sort of work at the same place until she died. She had no debts to pay. When the doctor got the farm under the contract she would have no business to manage, for that was all the business she had, and when he made the improvements they would have been made on his farm and not on hers. It is not to be believed that a respectable woman of good sense, such as the evidence shows Mrs. Wolfe to have been, would have made such a contract with a comparative stranger to her, as her future husband then was. The probabilities are that defendant was seeking a location suitable for his business, and found such a place at the Widow Crum's; that some arrangement was made between them by which she was to board him and his hands, and he was to make some necessary improvements upon the farm and have the use of it long enough to reimburse him for such improvements; that they worked along under some such indefinite arrangement until they became better acquainted, and, finally, about a year and a half after it was made, they married, and the contract then made at the altar was perhaps the only definite contract that was ever made between them, at

least it is the only certain and definite one we can find in the light of all the evidence in the case.

By the marriage the defendant became bound for the widow's support and maintenance during her life, and thus removed the only semblance of a consideration from the pretended contract; and, if anything was owing him for improvements theretofore made under the supposed agreement, the marriage canceled the debt. 2 Cord on Rights of Married Women, sec. 890 *b*, sec. 1580; Schouler on Hus. & Wife, sec. 132; *Smiley v. Smiley*, 18 Ohio St. 543; *Chapman v. Kellogg*, 102 Mass. 246; *Long v. Kinney*, 49 Ind. 235. They lived together as man and wife for some eight years. The defendant seems to have thrived in business from year to year, improved the farm as he had need, making the bulk of all the improvements during the marriage, to which relation and his right of usufruct thereunder his acts in so doing are referable rather than to any supposed contract. *Burleigh v. Coffin*, 2 Foster ( N. H. ) 118; *Marable v. Jordan*, 5 Humph. 417; Washburn on Real Prop. [ 3 Ed. ] p. 318.

And no presumption of a contract either to deed the land, or to reimburse him for the expense, arises from the making of such improvements. There is some evidence tending to show that Mrs. Wolfe was under the impression that the land was bound for the value of the improvements, and that in view of that fact and of the kindness and affection with which she had been treated by her husband she contemplated making him a deed to the land at some time, and this is about the idea the whole of the evidence gives of her sense of the obligation she was under to deed the land. She never did so, however. This idea is confirmed by a declaration of the defendant just after the funeral of his wife in which he said he expected "a pile of trouble in regard to the place about his improvements," and admitted that he had no contract for pay for such improvements.

Disregarding this evidence, however, it is certain that on the sixth of May, 1879, when he addressed the letter hereinbefore quoted to Frederick Rogers, one of the heirs of his wife, that the only claim he then thought he had was for pay for improvements, and that the claim that his wife had made a contract to convey to him the real estate for a valuable consideration before their marriage was an afterthought growing out of his situation and had no real foundation in the actual facts of the case. Disregarding all the evidence in the record which defendant claims was inadmissible and to which objection was made, the defendant failed to prove, even by a preponderance of evidence, the contract set up in his answer, and the court committed no error in finding against the existence of such a contract and refusing the prayer for specific performance.

On the pleadings this should have ended the case and judgment of ejectment should have been entered for the plaintiffs. Upon some theory, however, the court charged the land with the value of the improvements made by the defendant before the marriage. This action of the court we regard as erroneous, but from it the adult plaintiffs take no appeal, and they are in no position to ask for a reversal for such error.

One of the grounds upon which the defendant asks a reversal, however, is that two of the plaintiffs were shown by his answer and the evidence in the case to be infants and the court failed to appoint a next friend to protect their interests, and for this reason a reversal is asked. So far as these infants were concerned, their father being a party plaintiff to the suit and entitled to the present possession of their share in fee of the premises as tenant by the curtesy, they were not necessary parties to the adult plaintiffs' action in ejectment. To the cross action, however, set up by the defendant in which he sought equitable relief they were necessary parties, and as he failed in the court below to have a friend appointed to protect their interests, and seeks

now on appeal to have this error corrected, by a reversal of the judgment against said infants, his request in this behalf on the high plane of equity to which he has exalted himself ought to be granted.

The judgment of the circuit court is, therefore, for this reason only, reversed and the cause remanded, with directions to the circuit court to enter in the case a plain judgment in ejectment for the plaintiffs for the recovery of the possession of the premises, and for the rents and profits as found. All concur, except BARCLAY, J., who dissents as to the disposition that ought to be made of the case.