VAN CLEVE, Respondent, v. ST. LOUIS, MEMPHIS
& SOUTHEASTERN RAILROAD COMPANY,
Appellant.

**St. Louis Court of Appeals, April 2, 1907.**

1. **PLEADING: General Allegation of Damage: Evidence of Specific Injury.** In an action for personal injuries where the petition alleged that the plaintiff's "breast bone was broken, her chest bruised and crushed and that she was permanently injured," this was sufficient general averment of injury to let in evidence that the injury resulted in hemorrhages of the lungs and pulmonary consumption without specially pleading those specific injuries.

2. **PRACTICE: Incompetent Question Withdrawn.** Where an improper question was asked which the witness answered and, on objections being taken, the respondent withdrew the question, appellant could not base an assignment of error upon the failure of the court to strike out the answer to the question when he did not move the court to strike it out.

3. **PERSONAL INJURIES: Evidence of Previous Good Health.** In an action for damages on account of personal injuries to plaintiff, evidence that she was in good health two years prior to the injury, was admissible where she had testified that she had always enjoyed good health up to the time of the injury.

4. **PRACTICE: Exception: Ruling on Undisclosed Testimony.** The appellate court will not consider an assignment of error based upon a refusal of the trial court to admit oral testimony, where the record does not show what such testimony was excepted to be so that the court might tell whether it was relevant or not.

5. **NEGLIGENCE: Definition: Intelligence.** An instruction defining the meaning of the term negligence as that care and prudence which a man of ordinary "intelligence" would exercise, was erroneous; intelligence is not synonymous with caution, prudence or care.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*Faris & Oliver* for appellant.

(1) The court erred in admitting incompetent, irrelevant and immaterial testimony on behalf of the plaintiff. It was error, the allegations of injuries in plaintiff's petition considered, for the court to permit the introduction of testimony concerning the alleged fact that plaintiff was suffering from consumption, or tuberculosis of the lungs. Plaintiff specifically describes in her petition the injuries from which she alleges herself to be suffering and for which she seeks to recover. This allegation, as contained in the count upon which she went to the jury, is as follows: "Several severe internal and external injuries to-wit: breaking of plaintiff's ribs, and fracturing her breast bone, bruising and crushing her chest, injuring plaintiff's lungs and otherwise bruising and wounding plaintiff." Muth v. Railroad, 87 Mo. App. 422; Walthim v. Railroad, 71 Mo. 514; Schneider v. Railroad, 75 Mo. 295; Buffington v. Railroad, 64 Mo. 246; Edens v. Railroad, 72 Mo. 212; Garvin v. Railroad, 100 Mo. App. 617; Grady v. Transit Co., 102 Mo. App. 212. (2) The record shows that it has been almost three years from the date of the alleged accident till the asking of these questions. Therefore the allegations of plaintiff's petition are not sufficient to warrant the introduction of testimony that, as a result of such alleged injury, she had contracted and was suffering from consumption, such testimony being too remote unless specially pleaded. Arnold v. Maryville, 110 Mo. App. 254; Brown v. Railroad, 99 Mo. 318; 5 Ency. Plead. and Prac., p. 750; 58 Am. and Eng. R. R. Cases, 604; O'Leary v. Rowan, 31 Mo. 119; Sedgwick on Damages (12 Ed.), sec. 1270; Dowdall v. King, 97 Ala. 635; Taylor v. Monroe, 43 Conn. 36; Railroad v. Friedman, 146 Ill. 583; Silsby v. Car Co., 95 Mich. 204; Uransky v. Railroad, 118 N. Y. 304; Railroad v. Mitchell, 75 Tex. 77; Thompson v. Railroad, 111 Mo. App. 465.

*Duncan & Bragg, J. S. Gossom,* and *Ward & Collins* for respondent.

(1)    Appellant contending that under the allegations in the petition as follows: "several severe internal and external injuries, to-wit: breaking of plaintiff's ribs, fracturing her breast bone, bruising and crushing her chest, injuring plaintiff's lungs and otherwise bruising and wounding plaintiff" followed by allegation of permanency of injuries; that the court committed error in permitting the respondent to show that.she was suffering from consumption, or tuberculosis of the lungs. The admission of this testimony was not error, the rule of law being, that under a general allegation of injuries a party may show all the injuries arising directly in consequence of the injury complained; but where a specific injury is alleged as the result of negligence, then the plaintiff is confined in his proof to establish the exact injury complained of and no other. Arnold v. Maryville, 110 Mo. App. 260; Seckinger v. M'fg. Co., 129 Mo. 590; Gidionsen v. Railroad, 129 Mo. 401; 16 Ency. of Pl. and Pr., pp. 381, 382, 383, 385, 386; O'Leary v. Rowan, 31 Mo. 117.    (2)    Respondent having pleaded generally the injury to her lungs, if such general allegation did not specifically. inform the appellant of the charge it was required to meet; the appellant should have filed its motion asking the court to require respondent to make more definite and certain her allegations of injury; and having failed to do this appellant waives the same, and it must come prepared to meet any proof which respondent may offer showing, or tending to show, the real nature of the injuries directly resulting from the accident. R. S. 1899, sec. 612; Meller v. Railroad, 105 Mo. 466; 16 Ency. Pl. and Pr., pp. 405, 406; 6 Ency. Pl. and Pr., p. 274; Delie v. Railroad, 51 Wis. 400; Hanes v. Trenton, 123 Mo. 334; Davis v. Railroad, 126 Mo. 78.

BLAND. P. J.—This is the second appeal of this action. On the first one the judgment was reversed and the cause remanded for retrial (107 Mo. App. 96). After the cause was remanded, respondent filed an amended petition containing two counts. The first count was abandoned on the trial and only the cause of action stated in the second count was submitted to the jury, nine of whom signed and returned a verdict in plaintiff's favor for $1,250. The second count of the petition stated, in substance, that respondent, on November 19, 1902, took passage on one of appellant's trains at Yarbro, in the State of Arkansas, to be carried to Caruthersville, Missouri, and paid her fare; that on the arrival of the train at appellant's depot in the city of Caruthersville, the steps of the coach, in which respondent was riding, were covered with a slippery mud and ice and thereby rendered unsafe; that the train came to a full stop at the depot and respondent with other passengers was requested by appellant's agent, in charge of the train, to alight; that while the respondent was in the act of alighting, and was on the second step of the coach, "defendant carelessly and negligently jerked and backed said train suddenly and violently without giving any signal or warning whatever to this plaintiff, and by reason of the aforesaid slick mud and ice upon the steps aforesaid, from which plaintiff was attempting to alight from said passenger coach at the request of defendant, and by reason of the sudden and violent jerking and backing of said train, this plaintiff was thereby caused to violently slip and fall from the said steps of said train to and against the said depot platform and between the said steps and said platform; that by reason of said falling plaintiff then and there sustained several severe internal and external injuries, to-wit: breaking of plaintiff's ribs and fracturing her breast bone, bruising and crushing her chest, injuring plaintiff's lungs, and otherwise bruising and wounding plain-

tiff; that by reason of the aforesaid injuries plaintiff suffered great bodily pain and mental anguish, great loss of blood, great and lasting pain and loss of time, and was permanently injured and was at a great expense for medical services, to the damage of plaintiff in the sum of fifteen-thousand dollars."

The answer was a general denial and a plea of contributory negligence.

The steps of the coach were muddy and slippery when respondent attempted to alight. The train was made up at Luxora, Arkansas, and consisted of freight cars and one passenger coach. There had been a rain the day and night before. The soil between Luxora and Yarbro is black and sticky when wet. Twenty-five or thirty passengers had boarded the train by the time it reached Caruthersville and this fact may account for the muddy and slippery condition of the steps.

Respondent testified that when the train stopped at the depot, it came to a full stop and the passengers were asked by appellant's agent to disembark, and several passengers preceded her and alighted from the train in safety; that she had a valise in one hand and was holding to the handrail with the other, when she stepped on the second step of the coach, and while in this position the train was suddenly and violently jerked and moved, causing her to be violently thrown against the depot platform, striking her breast against the edge of the platform with such great force as to render her unconscious. She was carried into the depot, where she had a copious hemorrhage of the lungs, and was afterwards conveyed to a hotel where she remained in bed eight or ten days, having daily hemorrhages of the lungs. Respondent testified her ribs were fractured, her breast bone fractured or bent inward, her chest bruised and injured, and that she continued to have frequent hemorrhages of the lungs up to the day of the trial, had lost from twenty-five to thirty pounds in weight, was

unable to sleep without being propped up in bed and suffered constant pain; that before the injury she was strong and healthy, picked cotton and worked as a domestic servant, but since the injury she was unable to do any work whatever.

Dr. G. W. Phipps, respondent's attending physician, testified that she had tuberculosis of the lungs and, in his opinion, it was caused by the fall from appellant's car on November 19, 1902.

There was no evidence tending to show repsondent was guilty of contributory negligence, other than that she carried a large and heavy valise and, without noticing the muddy and slippery condition of the steps of the car, undertook to alight without assistance, which could have been furnished her by one of appellant's brakemen, who was present for the purpose of assisting passengers to alight from the train.

By order of the court, respondent was examined by three physicians, who testified that she did not have any pulmonary disease; that they failed to find any evidence that her ribs or breast bone had ever been fractured, or any evidence that she had received any external injuries whatever, and that her health was normal.

1. The testimony of Dr. Phipps, to the fact that respondent was suffering from pulmonary tuberculosis and, in his opinion, the disease was probably caused by the injury to her chest which she received from a fall on November 19, 1902, was objected to by appellant on the ground, first, that the petition stated specifically the injuries received and pulmonary consumption was not one of them; and, second, that as Dr. Phipps did not see respondent until December 24, 1904, her condition when the doctor saw her was too remote from the injury for him to form any correct opinion, and any opinion he might form would be simply theoretical. These objections were overruled, which action of the court was assigned as error. It is alleged in the petition that re-

spondent's breast bone was broken, her chest bruised and crushed, and that she was permanently injured. The petition does not allege what the permanent injuries are, nor whether one or more, or all of the physical injuries stated caused the permanent injuries. Notice of what a defendant is called on to answer and defend against at the trial is given him by the averments of the petition, and any evidence which does not tend to prove, and is not relevant to some averment in the petition cannot be introduced in chief for the purpose of proving the case. [Muth v. Railway, 87 Mo. App. l. c. 433.] But it is not required in an allegation of the damages caused by an injury, to specifically state all that resulted from the injury complained of. Any special damages that were the immediate result of the injury may be proved without specifically alleging them. [Grady v. Transit Co., 102 Mo. App. l. c. 215, 76 S. W. 673; Dickson v. Railway, 104 Mo. l. c. 503, 16 S. W. 381.] But if the pleader states what resulted from the injury complained of, he will be confined in his proof to the results stated. [Maginn v. Lancaster, 100 Mo. App. 117, 73 S. W. 368.] Respondent specifically stated in her petition the physical injuries caused by the fall, but did not state that the injury to her chest caused hemorrhages of the lungs and resulted in pulmonary consumption. Dr. Phipps testified that the consumptive condition of respondent's lungs probably resulted from the injury. This evidence, in connection with that of respondent, to the effect that she had been a strong healthy woman before the injury, had never had lung trouble and that after the injury she continued to have hemorrhages of the lungs down to the day of the trial, we think tended very strongly to show that if she has tuberculosis of the lungs it was a natural and probable result of the injury, and for this reason evidence of her consumptive condition was admissible without being specially pleaded; in other words, that it was a condition which appellant

might have anticipated and been prepared to meet on the trial. If appellant was in doubt as to what respondent expected to prove under the general allegation of permanent injury, it was its privilege to have called for particulars. [R. S. 1899, sec. 612; Mellor v. Railway, 105 Mo. l. c. 466, 16 S. W. 849.] In regard to the second ground of objection to the evidence of Dr. Phipps, that is, the length of time between the injury and when he first saw respondent, in the light of the fact, as shown by respondent's evidence, that hemorrhages took place immediately after the injury and continued down to the day of the trial, was not well taken.

2. On the examination of respondent, the following occurred:

"Q. Were you injured at any other place except the breast? A. Yes, sir.

"Q. State fully where? A. In my lower bowels, my right hip and right leg and left arm.

"Objected to by counsel for defendant and moved to strike out, because the petition does not allege any other specific injuries except to the breast bone and the chest; because the petition is indefinite.

"Counsel (for plaintiff): They could move to make it more definite.

"Objection overruled. Exception noted.

"Objected to further, because if plaintiff's counsel are correct in their petition it is too indefinite to permit the introduction of evidence like this; the defendant is not advised and not able to meet these alleged injuries.

"Objection overruled. Exception noted. Question withdrawn.

"Court: I have already passed on it and she has answered the question."

The petition specifically named several injuries respondent received. Injuries to the bowels, hip, leg and arm are not mentioned and should not have been admitted in evidence. The question which brought out

the evidence was answered and then withdrawn, but the answer stood. The answer should have been stricken out when the question was withdrawn, but it seems to us that to make its objections and exceptions available on this appeal, after respondent's counsel withdrew the question, appellant should have moved the court to strike out the answer, and excepted to the action of the court if it refused to grant the motion. Respondent should not be put in the wrong, after withdrawing the question which elicited the objectionable evidence.

3. Ira Enscore, a witness for respondent, who had not seen her for two years prior to her injury, over the objection of appellant, was permitted to testify that she was in good health when he knew her. Respondent testified she has always enjoyed good health up to the time of her injury, and did hard work, picked cotton and worked as a domestic. It would have been competent for respondent to prove the condition of her health from the period of adolescence to the time of her injury, and we can see no reasonable ground for the objection to Enscore's testimony.

4. In December, 1902, Dr. Conrad was called to see respondent by one T. H. Benton, who, in the presence of respondent, informed the doctor that they were suing the railroad company for ten thousand dollars and wanted him for a witness in their behalf and had called him in so that he might qualify himself to testify. Benton and the doctor left respondent's bedside together and on the way back to the doctor's office, he testified, Benton made some kind of a proposition to him. On objection of respondent, he was not permitted to state what the proposition was. Appellant claimed it was error not to admit the proposition. Appellant did not state what the proposition was he expected to prove by the doctor, therefore, we are not able to state whether or not it was material to the defense, even if we should concede (which we do not) that Benton was respond-

ent's agent and for that reason she was bound by what he may have said to the doctor in regard to the suit.

Appellant objected to the following instruction. given for plaintiff:

"1. The court instructs the jury that if you believe from the evidence in this case that when the train upon which the plaintiff was a passenger arrived at the depot of the defendant at Caruthersville, that it came to a stop or was at rest at said depot and the employees of the defendant requested the passengers thereon to alight therefrom and thereupon within reasonable length of time the plaintiff attempted, without negligence on her part, in so doing, as defined in the instructions, to alight from said train, and that while attempting to alight from said train the cars were suddenly jerked by the negligent act or careless conduct of those in charge of said train, without having given a reasonable length of time for plaintiff to alight from said car of said train, and that in consequence of such negligence of defendant's employees in suddenly jerking or moving said train the plaintiff, without negligence on her part directly contributing thereto, was injured, you will find for the plaintiff in a sum of not exceeding fifteen thousand dollars."

It is contended that the instruction selects certain portions of respondent's evidence and comments on them. We have discovered nothing of the kind in the instruction and can see no valid objection to it in any particular.

6. The court defined the term "negligence" by the following instruction given to the jury, to-wit:

"2. The court instructs the jury that the term 'negligence,' as used in the instruction, means the want of that care and prudence which a man of ordinary intelligence would exercise under all the circumstances of the situation."

The use of the word "intelligence" instead of the terms "prudence" or "caution," it is insisted, furnished

the jury no definition, or an incorrect definition, of the term "negligence." Judge Story, in commenting on what is ordinary intelligence, said: "A man may possess common sense, nay, uncommon sense, and yet be so grossly inattentive to his own concerns as to deserve the appellation of having no prudence at all." [Story on Bailments (8 Ed.), sec. 16.] Intelligence is not a synonym for either caution, prudence, or care. A very intelligent man may be a very imprudent one, or an unusually and unnecessarily cautious one. He is not the man who exercises ordinary care about his own concerns. The case is bottomed on negligence and is defended on the ground of contributory negligence, therefore, it was indispensable that the term should have been correctly defined by instruction to enable the jury to arrive at a just and correct verdict. No definition of the term "negligence" was given, wherefore the judgment is reversed and the cause remanded. All concur.