Cherbonnier v. Cherbonnier.

CHERBONNIER, *Appellant*, v. CHERBONNIER *et al.*

DIVISION ONE.

1. **Equity**: SPECIFIC PERFORMANCE : INDEFINITE CONTRACT.  A court of equity will not enforce the specific performance of a vague and indefinite contract.

2. —— : —— : ——.  In a suit by a son against his father to compel the performance of an alleged oral contract to convey real estate the plaintiff claimed that being engaged to marry C.'s daughter his father and C. agreed that C. should convey to the daughter property worth $3,000 on condition that plaintiff's father would convey to him property of like value, that plaintiff afterwards married C.'s daughter, and that C. relying on the agreement conveyed a house and lot to the daughter ; but that plaintiff's father refused to convey to the plaintiff as he had agreed to do.  It was not alleged or shown that the father ever agreed to convey any particular real estate, and the father testified that he never agreed to convey to his son the property in question.  C. did not convey the house and lot to his daughter until after he had notice that defendant did not intend to convey any land to his son.  *Held*, that the facts did not show an agreement which could be specifically enforced.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Thos. Thoroughman* and *J. K. Hansbrough* for appellant.

(1) That a party may sue directly on a contract made by another for his benefit, the contract in other respects being valid, is no longer an open question in this state. *May v. Lowell*, 44 Mo. 328 ; *Fitzgerald v. Barker*, 70 Mo. 685.  (2)  The deed of May 1, 1882, from George S. Case to his daughter was in conformity with his contract with the defendant, Andrew V. Cherbonnier.  The deed is an absolute conveyance of the

fee. The *habendum* clause being repugnant to the granting clause is void, and Mrs. Cherbonnier took an absolute title to the property, unrestricted by the terms of the *habendum* clause. *McDowell v. Brown*, 21 Mo. 57; *Ratcliffe v. Marrs*, 87 Ky. 26; *Smith v. Smith*, 71 Mich. 633; *Canal v. Hewett*, 55 Wis. 96; *Pynchon v. Stearns*, 11 Met. (Mass.) 312. (3) Even if it should be held that the deed of May, 1882, does not convey such a title as the contract contemplated, the deeds executed in March, 1888, relate back to and cure the defect in the first deed, and make the part performance effectual to avoid the statute of frauds. *Lionberger v. Baker*, 88 Mo. 547; *Williams v. Jensen*, 75 Mo. 681. (4) The acts of part performance alleged in the petition, and shown by the evidence, are sufficient to take this case out of the statute of frauds. Browne on the Statute of Frauds [Ed. 1880] secs. 441, 447, 448, 448*a*, 457, 459*a*; *Gears v. Hurlbert*, 102 Mass. 35; *Sharkey v. McDermott* 91 Mo. 647; Frye on Specific Performance [2 Am. Ed.] 263, sec. 409.

*E. T. Farrish* for respondents.

(1) "All promises in the nature of advancements or provisions in view of marriage are within the statute and must be in writing." 3 Parsons on Contracts, p. 30; *Weaver v. Johnston*, 58 Mo. 602. (2) But even if the case can be supported by parol testimony the evidence leads to the conclusion that there never was such a contract made as stated in the petition. (3) There was no part performance of the alleged contract. Celebration of marriage is no part performance. Story's Eq. Jurisp. 522*b*. There must be the payment of the purchase money, the delivery of possession, and the making of valuable improvements. *Johnston v. McGruder*, 15 Mo. 365; *Despain v. Carter*, 21 Mo. 331; *Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152. "In order to make a third person liable

upon his representations or promises, the persons seek-
ing to enforce them must show distinctly that clear and
sufficient promises were made; a vague representation
is not enough. Wood on Frauds, sec. 178; *Randall
v. Morgan*, 12 Vesey, 67; *Mainsell v. White*, 4 H. L. C.
1039.

BRACE, J.—This is a suit in equity instituted by
the plaintiff, Edward G. Cherbonnier, against his father,
Andrew V. Cherbonnier, to compel the performance of
a verbal contract alleged to have been made between his
father and his father-in-law, George S. Case, whereby
his father agreed to convey to plaintiff a certain lot,
fronting twenty-five feet on Finney avenue, in the city
of St. Louis.

The material averments of the petition are, in sub-
stance, that, in the year 1880, the plaintiff having
become engaged to be married to Annie C. Case, the
daughter of the said George S. Case, the said Case and
the defendant, Andrew V. Cherbonnier, agreed verbally
"each with the other, that said George S. Case would
convey within a reasonable time after said marriage
should take place, to his said daughter, real-estate resi-
dence property in the city of St. Louis, Missouri, of the
value of $3,000, upon the express condition that defend-
ant, Andrew V. Cherbonnier, would convey to plaintiff
within a like reasonable time after said marriage, real-
estate residence property in the said city of St. Louis, of
the value of $3,000; each agreeing and obligating him-
self to convey the said real estate as aforesaid, upon the
consideration and express promise of the other to con-
vey as aforesaid."

That the plaintiff having been informed of said
arrangement, afterwards, on the twenty-seventh of
April, 1881, intermarried with the said Annie C. Case;
that afterwards, and in pursuance and execution of said
agreement, the defendant purchased the lot described in
the petition, and paid therefor the sum of $1,250.

And at the same time the said Case purchased the lot next adjoining it on the east, for the purpose of complying with *his* part of said agreement, and immediately thereafter the defendant and the said Case commenced the erection of two houses upon said lots, in pursuance and towards the performance of their said agreement.

That after the work of erecting said houses was entered upon as aforesaid it was ascertained that they, together with the lots, would cost over $3,000 each; and thereupon it was verbally agreed between the plaintiff and his wife and said George S. Case, that as soon as said house, then being constructed by said Case, should be completed and conveyed to plaintiff's wife, under said agreement, as aforesaid, that plaintiff and wife would refund to said George S. Case such excess, that being the consideration and condition upon which said Case agreed to, and did, go on and complete the said house at a cost in excess of $3,000, agreed on as aforesaid. That said verbal agreement between plaintiff and said Case was communicated to defendant, Andrew V. Cherbonnier, by said Case shortly after it was made, when said Case stated to defendant, A. V. Cherbonnier, that, as he had made that arrangement as to his daughter, he supposed that he, A. V. Cherbonnier, would do the same as to his son, the plaintiff.

That said houses were completed under said agreement and arrangements, about the first of September, 1881, at a cost of about $5,000 each. That, as soon as said houses were completed as aforesaid, said Case put his said daughter into possession of the one built by him as aforesaid, in pursuance with his said agreement with defendant, A. V. Cherbonnier, and plaintiff and his wife aforesaid; and she has been in possession of said property as owner ever since. Afterwards, about May, 1882, in compliance with his said agreement with defendant, Andrew V. Cherbonnier, and pursuant thereto, with the full knowledge and consent of said

defendant, by what he deemed a good and sufficient deed, said George S. Case conveyed to his said daughter the said house and lot purchased and provided by him for that purpose as aforesaid, in consideration and upon the express condition that defendant, Andrew V. Cherbonnier, would convey to plaintiff the said lot purchased by him for that purpose, and in pursuance of the said agreement so to do.

That plaintiff and his wife, after being put in possession of the house and lot conveyed to his wife by her father, Dr. Case, made a satisfactory arrangement with him for the payment to him of the excess of the cost of said property over said sum of $3,000, and afterwards, in March, 1888, the said Case executed and caused to be executed other and sufficient deeds conveying the said real estate so purchased by him for his daughter to her; and has fully performed his part of said agreement, and that plaintiff has often requested his father, the defendant, to perform his part of said agreement by conveying the property so purchased and built upon by him to the plaintiff, to do which, however, he has always refused and still doth refuse. That plaintiff has at all times been and is now ready and willing and offers to pay the said defendant whatever may be the excess in the cost of said property over $3,000. That the said defendant, Andrew V. Cherbonnier, on the tenth of February, 1887, conveyed said real estate to his codefendant Farrish, in trust for the sole and separate use of Sarah C. Cherbonnier, also a codefendant and the wife of the said Andrew V.; that said deed was made without consideration, and was taken with notice of said agreement of the said Andrew V. Cherbonnier with said Case."

Wherefore plaintiff asks that the title to said real estate may be divested out of defendant and vested in plaintiff, and that an account may be taken of the cost of said house and lot, to the end that plaintiff may pay the excess thereof over $3,000 to defendant, Andrew V.

Cherbonnier, and that said defendant may be required to account for the rents and profits received by him and the other defendants since first of September, 1881, and for general relief.

The answer put in issue all the material allegations of the petition and set up some special pleas that it will not be necessary to notice. On the hearing the trial court found the issues for the defendants and dismissed the bill, and the plaintiff appeals.

It will be observed from the foregoing statement of the substance of the petition that the specific promise counted upon is that the defendant, within a reasonable time after the marriage of plaintiff and Miss Case, would convey to plaintiff "real-estate residence property in the said city of St. Louis of the value of $3,000," in consideration of a like promise upon the part of Dr. Case to convey property of a like character and value to his daughter. It is further alleged in the petition that, relying upon these promises, the plaintiff and Miss Case were married; but it is conceded in the argument that the marriage constituted no such part performance of the contract as would take the case out of the statute of frauds, and plaintiff relies solely upon the performance by Dr. Case of his part of the agreement for that purpose. It will be observed that the petition does not expressly charge that the defendant, Dr. Cherbonnier, promised to convey the particular real estate in question to his son, the plaintiff, but he seeks to set up and have specifically enforced against the said defendant a definite verbal contract to convey such real estate, of the value of about $6,000, upon payment of said $3,000; which it is not alleged he agreed to convey upon that condition, or at all; but upon the alleged promise of the defendant that he would convey to plaintiff *some* real-estate residence property, in the city of St. Louis, of the value of $3,000.

It appears from the evidence that some time in the winter of 1881, after the engagement and before the

marriage of the plaintiff to Miss Case, Dr. Case and Dr. Cherbonnier purchased a lot on Finney avenue having a front of fifty feet thereon; that Dr. Case bought the east and Dr. Cherbonnier the west half; each paid for his lot and each received a separate deed therefor. That soon thereafter they each entered into separate contracts with the same contractors, and under the supervision of the same architect, to erect for each on his own lot a house on the same general plan, the two houses to be built together with a partition wall in common, and the houses were accordingly so built; the house of Dr. Case with the lot costing him about $5,800, and the house of Dr. Cherbonnier with his lot costing him about $6,500. The houses were completed about the first of September, 1881. On the first of May, 1882, Dr. Case by his deed of that date in which his wife joined, and which was acknowledged on the twenty-sixth of that month and filed for record on the fifth of June following, "in consideration of natural love and affection," conveyed the lot thus by him purchased and built upon to his daughter, Annie C. Cherbonnier, wife of the said Edward, "to have and to hold to her, the said Annie C. Cherbonnier, for and during her natural life to her own separate use with power of sale or incumbrance in her, the said Annie C. Cherbonnier, during the life of the grantor, George S. Case, by and with his consent in writing, which consent shall be evidenced by his joining in such deed of conveyance or incumbrance. On the death of the said Annie C. Cherbonnier the property hereby conveyed shall pass to and vest in the heirs-at-law of the grantor, George S. Case, in fee simple."

At the April term, 1886, the plaintiff instituted a suit in the circuit court of St. Louis against his father, setting out substantially the same cause of action as in this suit, which was dismissed on the ninth of June, 1886. At the October term, 1886, of said court, he instituted another like suit in the same court, which

coming on to be heard on the ninth of February, 1887, the trial was commenced, and, pending the same, the plaintiff took a nonsuit with leave. Afterwards at the June term, 1887, of said court he instituted another like suit, which coming on to be heard on the second of March, 1888, was by leave of court dismissed by the plaintiff. Thereupon the said Case and plaintiff and his wife conveyed the Case lot to one Peter Camden Case, who thereafter on the sixth of March, 1888, reconveyed said premises to plaintiff's wife in fee simple; and two days afterwards on the eighth of March, 1888, plaintiff instituted the present suit.

It appears that, in the institution and prosecution of all these suits, the plaintiff has had the aid and co-operation of Dr. Case, upon whose evidence and that of the plaintiff the proof of the making of the alleged contract depends. The following extract from their evidence will show its probative force on that subject. Dr. Case testified : "I went to see him [ Dr. Cherbonnier ], and he remarked that 'the young people, it seemed, were going to be married.' I said, 'Yes, it seemed so.' He said he didn't like to see young people start out in life without something, and said, 'Now, if you will build them a house I will furnish it.' I told him at that time I was not able to build a house. 'Well,' he says, 'I will build one with you then—we will build it together ;' to that proposition I acceded and remarked to him, 'It would be a great deal better for us to build two little houses in place of investing so much money in one, so that they would have one to live in and one for revenue,' and he agreed with me ; but he said he had always poor luck in building ; that houses cost more in building than first expected, and he preferred buying. I told him that would suit me." He then testifies to some efforts made to find suitable property, resulting finally in the purchase of the Finney avenue lot and the erection of the buildings thereon as hereinbefore stated. That as soon as his building was completed he

put his daughter in possession, and since she has been receiving the rents and profits thereof.

Further on in his examination in chief, he was asked by plaintiff's counsel: "*Q.* What was the bargain, if any, as to the amount of the donation that was to be made by you and Dr. Cherbonnier to these two young people? *A.* We agreed upon $3,000 apiece.

"*Q.* Did the houses cost $3,000, or more or less? *A.* Cost a good deal more.

"*Q.* Was there any agreement between you and Edward Cherbonnier about how the excess was to be paid back which was communicated or talked over with Dr. Cherbonnier? *A.* Edward Cherbonnier said to me once that the houses were going to cost more than the first amount intended as the locality demanded a finer house, and I said, 'Very well, I will agree to it and you can pay us back out of the rents;' then I went to Dr. Cherbonnier and told him the same thing."

"*Q.* What did he say? *A.* He didn't say a word."

The plaintiff, testifying on this branch of the case, says: "Dr. Case called at the office and had a conference with father, who told me after Dr. Case left that he had made a proposition to Dr. Case, and told him that the French custom was to settle something on young folks, and that Case was non-committal; that, after a second interview, his father told him that he and Dr. Case had agreed to buy two small houses, one to live in and one to rent, 'in case of rain;' that after an effort of some time the hunt for suitable houses was given up, his father telling him that Dr. Case had large experience in building, and that they were going each to build a house; the next thing he knew they had bought two lots, and his father took him out to see them; that after Dr. Case completed his house, about the first of September, 1881, he delivered possession of it to plaintiff's wife who has since been in receipt of its rents."

In reference to the agreement between the witness, his wife and Dr. Case, testified to by Dr. Case, plaintiff says : " I think this agreement was before the marriage. I never heard my father confine himself to any amount, but Dr. Case said about $3,500 ; it was my suggestion to pay the excess over $3,500.

" *Q.* Now if that arrangement was communicated to your father you may tell the court. *A.* No, sir. I never told my father of the arrangement Dr. Case had made, because my father never told me that he had confined himself to that amount with Dr. Case. He said they were building the houses, but he never told me that he confined himself to that amount. Nor do I know that Dr. Case ever communicated to my father the agreement that I should pay back the excess over an agreed sum. I don't remember that I ever asked my father to convey me that house and lot. I am not sure whether I authorized Dr. Case to make a request for such conveyance. I don't remember making such request of Dr. Case."

In addition to the foregoing, some loose declarations of Dr. Cherbonnier's said to have been made while the houses were being built were testified to by two witnesses, to the effect that the houses were intended for a wedding present to the children ; and one to Col. Thoroughman, afterwards, that he had built the house for his son, and intended at one time to give it to him, but that now he would not. The foregoing presents the salient features of the plaintiff's case.

On the other side, Dr. Cherbonnier testified, in substance, that after he had been informed by his son of his engagement to Miss Case, and had made her acquaintance, and they had both promised him to be married in the Catholic church, he "said to his son : ' Under those circumstances I am quite satisfied that the marriage shall take place * * * if you are married in that way. I have got $2,000 in government bonds. I will buy a little house that may cost $2,000

or $2,500. I intend to break up housekeeping this spring and I will furnish it and let you live in it, and if things progress satisfactorily and pleasantly, and it is agreeable to you I will live with you.' * * * After that, I saw Dr. Case at my office, and I said to him: 'I intend to buy a house; I have been looking out for a house for some time,' and if I should find such a house to suit that I intended to let them live in it, and that I would furnish it. After that Dr. Case suggested to me; says he, 'I think I can build a house for less than you can buy one,' and urged me and insisted upon it. Finally, he came to me and made this proposition; says he, 'How much do you want to put in a house?' I said, 'About $2,500,' and he said, 'I think I can build a house, if you will build with me that will cost about $3,000.' And he said he would look around for a lot, and he took me around in his buggy, and we looked at many lots. Finally, he found a lot on Finney avenue, where the location suited me, and he bought one lot and I bought the other, and the houses were put up. That was all, substantially, that occurred between Dr. Case and myself. Nothing was ever said about an agreement or contract to obligate me, or to obligate him, to do anything. I will state that never at any time was there any agreement or contract between Dr. Case and myself. I never entered into a contract with Dr. Case. * * * When these houses were in process of construction I met Dr. Case there quite frequently, and on one occasion when the houses had gone to the first story Dr. Case came up to me and made the proposition that we give to each of our children a life-estate in our respective houses. He said to me that he would give his house to his daughter during her life, and at her death it would come back to him, and proposed that I do the same, and my answer was, 'If I give anything, I will give it out and out.' That was the first and only time that a proposition was ever made to me to give a house, and my answer was what I stated."

It further appears from the evidence that, some two or three weeks before the marriage, the plaintiff and his intended came to the conclusion not to be married in the Catholic church, but by an Episcopalian minister, by whom they were finally married. This seems to have given offense to Dr. Cherbonnier, and he did not attend the wedding nor visit them afterwards, and was the commencement of an estrangement between father and son which was afterwards intensified by other supposed grounds of offense, to some extent disclosed in the evidence, but which need not be further noticed, and which seems to continue to the day of the trial. And plaintiff testifies that "he had doubts about his father conveying to him when he didn't come to the wedding and before the houses were finished, and so told Dr. Case, but Dr. Case wouldn't listen to him." It seems the investment made in this property was a good one, the houses each yielding a rent of $50 to $60 per month.

I.   It is not seen how the chancellor, on the pleadings and evidence in this case, could have done otherwise than dismiss the bill, upon the familiar principles by which courts of equity are governed in actions for specific performance of verbal contracts for the conveyance of real estate, which it is claimed are excepted from the statute of frauds by reason of performance on his part of the contract by the party seeking relief. In the recent case of *Rogers v. Wolf*, 104 Mo. 9, and *Emmel v. Hayes*, 102 Mo. 195, these principles are thus briefly stated in the language of the authorities therein cited: "It is not only indispensable that the acts done should be clear and definite and referable exclusively to the contract, but that the contract should also be established by competent proofs to be clear, definite and unequivocal in all its terms. If the terms are uncertain or ambiguous or not made out by satisfactory proofs, a specific performance will not ( as, indeed, upon principle it should not ) be decreed. The reason would seem obvious

enough, for a court of equity ought not to act upon conjecture, and one of the most important objects of the statute was to prevent the introduction of loose, indeterminate proof of what ought to be established by solemn written contracts."

"There must be satisfactory proof not merely of some agreement leading to acts of part performance, in pursuance of which they are done, but sufficient to establish *the particular agreement* alleged. The proof of this point must be satisfactory." "And this proof of the agreement should be 'of so clear and forcible a nature as to leave no room for reasonable doubt in the mind of the chancellor.' * * * And there must be like proof that the acts performed refer to, and result from, that agreement, and are such as would not have been done 'unless on account of that very agreement, and with a direct view to its performance.' "

"The rule is general in its application and fundamental in principle that acts which are referable to something else than the verbal agreement, and which may be ordinarily otherwise accounted for, do not constitute a sufficient part performance of it." "There must be no equivocation or uncertainty in the case."

The early regret expressed by many eminent jurists that courts of equity in cases coming within the statute of frauds did not, in the beginning, strictly follow the law, is perhaps becoming in this day intensified, in view of the encroachments upon that statute that are continually being attempted upon all sorts of pretexts and supposititious equities. If any stand is to be made against such encroachments, which threaten a practical repeal of the statute by judicial legislation, the limits prescribed in the foregoing quotations from the authorities must be strictly maintained in the light of the fundamental idea, that the only tenable ground upon which the departure can be justified is the prevention of fraud not reparable by damages in an action at law.

The case in hand will scarce bear the touch of these principles at any point. Everything in it is loose and indeterminate. The plaintiff asks a court of equity to compel his father to convey to him absolutely the particular house and lot described in the petition, costing the father over $6,000 upon payment to him of the excess of such cost over $3,000, although he does not allege in his petition, nor is there any evidence in this record showing, that his father ever agreed so to do. Instead, we have only evidence tending to prove some such agreement between the plaintiff and his father-in-law, Dr. Case, in regard to his lot and house, which agreement, when presented to Dr. Cherbonnier, he refused to accept. And, although the terms of this agreement are left so vague and uncertain by the evidence, that the conclusion can as well be drawn therefrom that plaintiff's wife was only to receive a life-estate in the premises after the excess had been paid out of the rents, as that she was to have an absolute estate in fee upon payment of that excess, yet the court is asked to first make these terms definite and certain by fixing upon Dr. Case a definite obligation under the agreement to make an absolute conveyance in fee simple to his daughter upon payment of the excess, and then impute to Dr. Cherbonnier a like definite agreement and fix upon him a like obligation to his son. Upon no known principle could such an extraordinary draft be honored, even by the "expansive powers of a court of equity."

The baldness of this proposition is sought to be relieved by the allegation in the petition that Dr. Cherbonnier did agree to convey some real-estate residence property in the city of St. Louis to his son, of the value of $3,000. And it is contended the evidence tends to show that he intended the premises in question, and that he intended to convey it in fee. This does not help the matter. It is simply asking a court of equity not to enforce a specific contract made by the defendant,

but to convert an agreement confessedly too vague and indefinite to be enforced by intendment into a specific contract, and then enforce it. In other words the court is asked to execute the intentions of Dr. Cherbonnier, not his contract; to make a contract for him, and then enforce it. But the proof of even this alleged indefinite agreement is not at all satisfactory; it cannot be certainly deduced from anything that Dr. Cherbonnier said or did. All that can be legitimately drawn from the evidence is that Dr. Cherbonnier entertained and expressed a willingness at one time to invest some money in residence property for the benefit in some way of the about-to-be-married couple; the amount uncertain, and the interest they were to have in the property undefined; that Dr. Case, entertaining at the same time a corresponding disposition, the lots were bought, and the houses commenced, without any sense upon the part of either that they were doing so by force of any contractual obligations between them, but moved thereto by the "love and affection" which each entertained for his child.

In a very solemn manner Dr. Case declared afterwards, in his deed of May, 1882, to his daughter, that he was moved thereto by that consideration; and that his intention was then that she was to have a life-estate only in the premises conveyed, and not an absolute estate in fee as now claimed, thus negativing any such agreement as is now sought to be set up, even upon his own part.

The injury complained of is that Dr. Case was induced to convey to his daughter upon the faith of Dr. Cherbonnier's promise to convey to his son (the purchase of the lot and the erection of the building caused no injury, it proved to be a good investment); yet the evidence shows that, more than a year before the conveyance of 1882 was made, plaintiff and Dr. Case were advised and knew that Dr. Cherbonnier did not intend to convey to his son, and the conveyances made in 1888

were only made after years of unavailing effort made to compel such a conveyance after he had refused to do so. How then can these deeds be said to have been made upon the faith of the defendant's promise ; not to compel a performance of which would be to operate a fraud upon the plaintiff or Dr. Case ?   Thus the evidence fails to prove any particular agreement, such as could be enforced by a court of equity, and fails to satisfactorily prove any act done prejudicial to the interest of Dr. Case or the plaintiff, in part performance thereof in reliance upon and referable solely to such an agreement, and of which it can be said, but for such an agreement, it would not have been done.

The circuit court committed no error in dismissing the bill, and its judgment is affirmed.   All concur except BARCLAY, J., not sitting.