W. R. GOODIN et al. v. JOHN L. GOODIN, Appellant.

Division One, February 18, 1903.

1. **Specific Performance:** PAROL CONTRACT TO CONVEY LAND: CHARACTER OF PROOF. In order to sustain the claim of a child in possession of land to which his father died seized and intestate, that he had entered into possession thereof under a verbal contract with his father, by which the father, in consideration of the work and labor which he had theretofore done for him after he had arrived at

the age of maturity, agreed to give him the premises, and thereafter to make him a deed thereto, such child must show a contract in clear, definite and unequivocal terms to give or convey to him the particular tract in question, by evidence so cogent and satisfactory as to leave no room for reasonable doubt as to what the agreement was. And if the son has made improvements on the land after having been put into possession, like evidence must be forthcoming to show that they were so made as a result of such agreement.

2. ———: IMPROVEMENTS: OFF-SET BY RENTS. Where the unpaid rental value of the land in such case equals or exceeds the value of the improvements thereon made by the son, it will be held that a refusal to enforce an unproved contract to convey will work no fraud on the child who made the improvements, if the one is by the judgment set off with the other.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Gideon & Gideon* for appellant.

(1)   From the facts and circumstances in evidence in this case there is no doubt that the defendant was induced to enter into the possession of the land and make the improvements thereon, relying upon the promise of his father to deed it to him, and having changed his condition, incurred liabilities, expended money and labor on account of that understanding and performed three years previous labor in building a house for his father on another tract of land, he furnished valuable consideration, and under the authority of the following cases, equity will compel a specific performance of the promise:   West v. Brundy, 78 Mo. 407; Anderson v. Shockley, 82 Mo. 250.   And in such case the defendant stands before a court of equity in the attitude of a purchaser, and may compel a conveyance.   Dosier, Adm'r, v. Matson, 94 Mo. 328.   (2)   The position of the defendant is that he is a purchaser from his father for a valuable consideration under the contract to help him build a house on another tract, and that he has fully performed his part of that contract—this together with the fact that his father had a deed prepared, and his

verbal admissions to the various disinterested witnesses for defendant "that the forty was John's; that he had earned it. I give it to him," and the seven or eight years possession and improvements under the very nose of his father, go to show conclusively the contract and its performance, and that defendant ought in equity to have specific performance of the contract. White v. Ingram, 110 Mo. 474; Hubbard v. Hubbard, 140 Mo. 300.

*Patterson & Patterson* for respondents.

(1) Where the legal title is admitted by both sides to be in the plaintiff, but the defendant sets up an equitable defense, there is but one issue to be tried, which is that presented by the equitable defense, and this the defendant must establish or plaintiff is entitled to recover. Schuster v. Schuster, 93 Mo. 438. (2) To decree specific performance is largely within the discretion of the chancellor and can not be awarded unless the terms of the contract and its provisions are clearly proven and are not indistinct or indefinite. Paris v. Halley, 61 Mo. 459; Taylor v. Williams, 45 Mo. 84; Ringo v. Richardson, 53 Mo. 385; Kennedy v. Kennedy, 57 Mo. 73; Forrester v. Scoville, 51 Mo. 268. (3) Under the pleadings in this case appellant takes the position that there was a verbal contract to convey the land in question for a valuable consideration, which contract was wholly performed on appellant's part, and that it would now be a fraud upon him to refuse to decree specific performance. First, to warrant recovery the verbal contract must be established by competent evidence to be clear, definite and unequivocal in all its terms. Johnson v. Quarles, 46 Mo. 425; Sitton v. Shipp, 65 Mo. 297; Railroad v. McCarty, 97 Mo. 214; Berry v. Hartzell, 91 Mo. 132; Brownlow v. Fenwick, 103 Mo. 420; Rogers v. Wolfe, 104 Mo. 9. Second, the proof must be equally clear as to the consideration for such contract. Fuchs v. Fuchs, 48 Mo. App. 23. Third, the facts of part performance must be supported by evidence equally

clear and forcible that the acts performed resulted
from such an agreement and with a direct view to its
performance. Emmel v. Hayes, 102 Mo. 186; Ells v.
Railroad, 51 Mo. 200; Brownlee v. Fenwick, supra;
Rogers v. Wolfe, supra.

BRACE, P. J.—This is an action in ejectment to
recover possession of the northeast quarter of north-
east quarter of section 31, township 28, range 23, in
Christian county, Missouri. The petition is in common
form. The answer of the defendant admits possession,
and denies the other allegations of the petition, and sets
up an equitable defense, on which issue was joined by
reply. A change of venue was taken from the Chris-
tian to the Greene Circuit Court, where the case was
tried before the court without a jury. The finding and
judgment was for the plaintiffs for the undivided nine-
tenths of the premises, and the defendant appeals.

In February, 1899, John Goodin, late of the county
of Christian, died intestate, seized in fee of the prem-
ises. The parties to this action are his widow, who
elected to take a child's share, and the heirs at law of
said deceased. The defendant being his son, and the
plaintiffs his widow, children and grandchildren, en-
titled to the undivided nine-tenths of the premises as
found and adjudged by the circuit court, unless the de-
fendant has made good his equitable defense and coun-
ter-claim. The substance of that defense and claim is
that on the first day of January, 1892, the defendant
entered into the possession of the premises under a
verbal contract with his father, by which his father, in
consideration of the work and labor which defendant
theretofore had done for him after he had arrived at the
age of maturity, agreed to give him the premises, and
thereafter to make him a deed for the same; that in
pursuance of such agreement he erected a dwelling
house and made other valuable improvements thereon,
and since has continued to occupy the same as his home.

The evidence tended to prove that the defendant
became of age about the year 1884, and was married in
1890. That between those dates he worked for his

father on his home place, doing general farm work and assisting in the building of a house "off and on" for about two or three years, during which time he made that place his home, and his stock, consisting of some horses and hogs, were kept on the farm. That after his marriage he went elsewhere to live. That his father owned about 350 acres of land in Christian and Greene counties. That one of his tracts containing eighty acres consisted of two adjoining forties, one north of the boundary line between those counties in Greene county, and the other south of that line in Christian county. The south forty in Christian county is the land in controversy. That sometime about the first of January, 1892, the defendant went into possession of this tract of land. That he went into possession of the north forty in Greene county as a tenant of his father from year to year, agreeing to pay as rent therefor one-third of the crop to be raised thereon, is conceded. The evidence tends to prove that the other forty, the premises in question, was timber land under fence, rough and rocky, of which about eighteen acres was in cultivation, the remainder in its natural state. That after the defendant went into possession he cleared up and put in cultivation some ten or twelve acres more, the timber off of which he either used himself, or sold to others. That he repaired the fencing, set out a small orchard, dug and walled a well, erected a one-story frame dwelling house of two rooms fourteen by fourteen feet each, with a box kitchen twelve by fourteen feet attached, a stable or two, a smoke house, and some other small necessary buildings, the value of which improvements to the premises was probably about six hundred dollars, and the cost aside from the labor of the defendant, and the materials used from the place, was probably about three hundred dollars. Of this outlay one hundred and forty-nine dollars was for lumber that went into the dwelling house, for which the defendand and his father executed their joint promissory note, which note with the accumulated interest, amounting in the aggregate to $197, his father afterward on the first of June, 1898, paid. The evidence also tended to prove

that the defendant received one dollar per load for the wood he sold off the place.   That the premises were always assessed to his father, and the taxes thereon paid by him as long as he lived.   That between the time when defendant became of age and was married he lived for a time on another tract of land which he rented from his father, and for some twelve or eighteen months was engaged in the livery business in a neighboring town.   That at the time of his marriage his father held two notes of his, one dated March 15, 1889, for $250, payable to his father, and one dated March 9, 1889, for $150, payable to a third party, which he continued to hold until his death. That the rental value of the premises was about $100 per annum. In connection with the foregoing facts, the evidence upon which the defendant relied to support his claim is thus summarized in the brief of his counsel:

Dora Steigel testified that "she worked at John Goodin's for about two years, and when she first went there, the deceased said  he would go after John and have him come home and work there and help build that house, and that he would deed John that eighty acres of land; that was about fourteen or fifteen years ago; that John worked all the time and helped build the house."   She is a great niece of deceased.

Samuel H. Stewart testified that "he was no kin to these parties and that nine or ten years ago defendant hired him and paid him to build flues to the house he was building on the Christian county forty; and at that time deceased asked him what he thought of John's farm and that he told him, he thought it a rock-and-brush patch but that good hard work would probably make a good farm out of it, and deceased said, 'Well, John is the man to make it'; and that in the last three or four years deceased in a conversation said, 'John was doing pretty well since he got on the farm.'   I told him, I thought John would do still better if he owned the place, to which deceased replied, 'Well, he does own it, I gave it to him.   I deeded it to him.'"

Henry Hays testified that he was "no kin to these parties, and that deceased talked to him lots, and that

in one conversation three or four years back deceased told him that he gave John that forty acres of land over in Christian county; that John had been a good boy to work; that he was the best worker he had, and had done more for him than any child he had, and therefore he gave him the piece of land, and he owed it to him; he thought that he had earned it.''

Fred Balmour, whose children are cousins to defendant's wife, swore that ''he had a good many conversations with deceased, always told him that he gave that piece of land to John. The last conversation with him was two years ago this fall on the Square in Springfield, he told me that 'he gave it to him, he had earned it; that he was the best child he had to work; that he stayed with him so long to work for him.' This is the way he meant it, I think. He told me seven or eight years ago, that he was going to give John that land; that John built a house there.''

John Claiborn testified that ''while he was city marshal, constable and deputy sheriff eight or nine years ago he officed with Squire Houts, and deceased came in and told old man Houts 'he wanted him to write a deed,' and Houts asked, 'where the land was,' and he said 'in Christian county; it's a forty down there. I want to make it to John.' Houts told him he was only a justice of the peace and could not take this acknowledgment in Christian county.' Deceased replied, 'That don't make any difference. You write the deed. My wife won't sign it anyway;' and he wrote the deed and the old man put it in his pocket and went out.''

William Houts testified that ''he was a justice of Republic township in 1894, and that deceased came into his office and asked him to write a deed; I asked him 'who to?' He told me, and gave me the numbers. I said 'that land is in Christian county, and that I could not execute the deed—could not take the acknowledgment to it—being only a justice of the peace, it would not be good in the other county.' The numbers was the northeast quarter of the northeast quarter, section 31, township 28, range 23. He said he wanted me to write

a deed for this piece of land to John L. Goodin, and I wrote it. This was along about 1892 or 1893. I would not be positive about the year. I wrote the deed and John L. Goodin was named as grantee. John Goodin and wife were makers. It was made to the defendant, John L. Goodin. I don't know whether the consideration was love and affection or money consideration. After I had written the deed for him he took it and stuck it in his left-hand pocket, and said, 'Squire, say nothing about this.' That is what draws my attention to this business and I never knew but what John had his deed till this suit came up. I am no kin to these parties.''

John D. Kemmel testified ''that in the spring of 1897 he spoke to the old gentleman one day about buying an acre of ground over in Christian county. He said, 'That don't belong to me, it belongs to John. You will have to see John about it.' So I went to see the defendant, and he said, 'I don't want to sell it; I won't sell it at all; it will ruin the shape of my land.' I wanted to build a drugstore on it.''

And to disprove his claim the plaintiffs introduced evidence tending to prove a positive oral agreement between the defendant and his father under which he entered into possession of the premises as a tenant of his father from year to year upon the same terms that he rented the other forty from him.

The defendant himself was permitted to testify in his own behalf, and while he testified that his father some seven or eight years before he took possession of the premises, promised to deed him eighty acres of land if he would come home and help him build a house, he in no way connected that promise with the land in question, and would not, at least did not testify to any agreement between him and his father as to this forty acres of land, although an opportunity to do so was afforded him. He admitted, however, that he rented the adjoining forty from his father, and paid him the rent therefor; and that he cultivated the forty in question and used the stuff raised on it, but denied that he ever paid his father any rent for it.

In order to sustain the defendant's claim it devolved upon him to show a contract in clear, definite and unequivocal terms, with his father, to give or convey to him this particular piece of land, by evidence so cogent and satisfactory as to leave no room for reasonable doubt, and in like manner and by like evidence to satisfy the mind and conscience of the chancellor that the improvements made by him on the place were, the result of such agreement, made in pursuance and on account thereof, and but for it they would not have been made, and that a refusal to enforce the contract would operate as a fraud upon the defendant. ''There must be no equivocation or doubt in the case.'' [Rogers v. Wolfe, 104 Mo. 1; Emil v. Hayes, 102 Mo. 186; Brownlee v. Fenwick, 103 Mo. 420; Cherbonnier v. Cherbonnier, 108 Mo. 252; Hubbard v. Hubbard, 140 Mo. 300; Alexander v. Alexander, 150 Mo. 579; Sitton v. Shipp, 65 Mo. 297.] The evidence as it appears in the record before us is full of equivocations and contradictions, and that there was some false swearing is beyond question. A careful perusal of the whole of it, leaves the mind in doubt and uncertainty as to what was the real truth of the matter. If the witnesses for the plaintiff are to be believed no such contract as the defendant claims was ever made by his father with him, and even discarding that evidence, and viewing the transaction from the standpoint of defendant's evidence only, in connection with the established facts, the proof falls short of the required standard as stated and laid down in the cases cited. All the evidence was given orally in court before the chancellor. He was in a much better position to determine the credibility of the witnesses, to properly weigh their evidence, and to reach a correct conclusion on the matters of fact in controversy than we are. He found the issues for the plaintiffs, and assessed the damages at one cent. The rental value of the premises from the time the defendant took possession, January 1, 1892, until the date of the judgment, March 29, 1900, exceeded the value of the improvements, and under the evidence we do not see how the chancellor could

have made a more equitable disposition of the case. The judgment of the circuit court is affirmed. All concur.