## AMANDA CABLE v. JONES, Appellant.

**Division One, February 10, 1904.**

Specific Performance: CHANGE OF CONTRACT AFTER EXECUTION BY SELLER. The agent of the seller and the purchaser, having agreed upon the terms of a contract for the purchase of land, went to a lawyer who drew up a contract which obligated the seller to pay all taxes and assessments "now a lien on the property," and this contract the seller signed, he says without reading it. Afterwards his agent wrote in the words "now due and payable" after the words "property," which was a material alteration, since certain special taxes were then a lien, but under the charter of the city were payable in four annual installments, and hence they were not then "due and payable." The agent then took the contract in this form to the purchaser, and, in answer to an inquiry if the contract was as written, answered, "Precisely," but the purchaser read it over and discovering the change, charged the agent with trying to deceive him, and demanded that the words be erased, which the agent did, and did so he says because the purchaser coerced him into doing so by declaring that unless he did erase them there would be trouble "right now." Thereupon the contract was signed by the purchaser, fifty dollars was paid down, and the balance afterwards tendered, but the seller refused to make the deed because the contract obligated him for the taxes then a lien. *Held*, that the trial court in a suit by the purchaser, properly decreed specific performance.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*Henry Smith* for appellant.

The contract as brought back by McLaughlin to appellant was not the contract that left appellant to be taken by McLaughlin to Mrs. Cable to be signed. If

that was all the contract that Mrs. Cable would agree
to and sign, then there was no agreement between Jones
and Mrs. Cable for the sale and purchase of the lot.
The minds of the parties never met on this transaction.
Mrs. Cable was present when McLaughlin erased the
words that made Jones liable for the payment of over
$200 paving tax bill.   She then signed it.   Jones was
not there, and at the first opportunity Jones repudiated
it.   Both Jones and McLaughlin testified that Mc-
Laughlin had no authority to erase the words "and
which are now due and payable," so that the erasure
was made by the direction and requirement of Mrs.
Cable, and was in no sense the act of Jones.   It was
the act of Cable and McLaughlin in the absence and
without the authority of Jones.   The alteration was
material, was procured by the Cables, not ratified by
Jones, and hence is a nullifying alteration.   Kelley v.
Thuey, 143 Mo. 422.

*O. A. Lucas* for respondent.

(1)   Defendant, by offering the duplicate contract
in evidence and making no objection to the original
when offered by plaintiff, has ratified and adopted it
as the contract between the parties, and can not com-
plain of the trial court for so finding, and decreeing
that he must live up to its letter.   He is certainly bound
by the evidence he introduces, and can not well contend
that the court's decree is erroneous, based upon this
contract.   (2)   The interlineation made by McLaughlin
and afterwards taken out, was, at most, but a spoliation,
and is in no way material.   The evidence is conclusive
that the contract sued on, and set out in the record, is
the one on which the minds of the parties met, and the
trial court was fully justified in so decreeing.   2 Cyc.,
p. 143; 1 Greenleaf on Evidence (14 Ed.), sec. 566;
Medlin v. Platte Co., 8 Mo. 239; McMurtrey v. Sparks,
71 Mo. App. 131; State v. McGonigle, 101 Mo. 367;

1 Am. and Eng. Ency. Law, 505; Lubbering v. Kohl-brecher, 22 Mo. 596; Kelly v. Thuey, 143 Mo. 522; Powell v. Banks, 146 Mo. 620; City of Orlando v. Gooding, 15 So. 770; Acme Harvester Co. v. Butterfield, 80 N. W. 170; Hayes v. Dumont, 2 Ohio Cir. Ct. 229; Newton v. Bramlett, 55 Ill. App. 661; Osborne v. Andrees, 37 Kan. 301; Mastin v. Grimes, 88 Mo. 478.

MARSHALL, J.—This is a proceeding in equity to compel the defendant to specifically perform his contract, to sell to the plaintiff lot 1 of McLain's Woodland Park, on the southeast corner of Twenty-ninth street and Woodland avenue in Kansas City, having a front of fifty-one feet, by a depth of one-hundred and thirty feet. The answer is a verified plea of *non est factum,* and a general denial. The plaintiff secured a decree in the circuit court, and the defendant appealed.

No errors of law are assigned. The defendant's whole contention is that the trial court erred in its finding of fact.

Briefly stated the controversy is this: the defendant owned the land in question, and had placed it in the hands of J. A. McLaughlin, for sale, at the price of five hundred dollars. McLaughlin advertised it for sale at six hundred dollars. The plaintiff wanted to buy it, and her husband, acting for her, entered into negotiations with McLaughlin to buy it, and offered him four hundred dollars for it. McLaughlin reported the offer to the defendant, and he told McLauglin he would take four hundred and twenty-five dollars for it, and that he, McLaughlin, might have all he could get over that amount. McLauglin then told plaintiff's husband he could have it for four hundred and fifty dollars, and he said to get up the contract. When McLaughlin brought the contract to Mr. Cable he said he was not satisfied whether or not the contract covered the special taxes. Mr. Cable says that when McLaughlin told him he had the property for sale, the first question he asked him

was whether the price covered the paving and sewer taxes, and McLaughlin said they were all paid, but if not they would be paid. McLaughlin denies that anything of the kind took place. At any rate, Mr. Cable and Mr. McLaughlin went to the office of Mr. Lucas, Mr. Cable's attorney, and he objected to the contract that Mr. McLaughlin had drawn up, and the latter went and got a printed form of a contract, and Mr. Lucas changed it and drew up a contract, which contained this provision: "The seller also agrees to pay all state, county and municipal taxes, general and special, and all assessments now a lien on said property, excepting taxes for the year 1901 and thereafter, and all assessments for public parks not now due and payable, which are to be assumed and paid by the buyer." The contract so drawn was given to McLaughlin to be signed by Jones, the defendant. McLaughlin took the contract to Jones, and he signed it, just as it was written, he says without reading it. After he signed it McLaughlin took the contract so signed by Jones to Cable, and he said he still was not satisfied about the special taxes, that they might be a lien although not issued, and asked him to let the matter rest until the next evening, which McLaughlin agreed to. Cable consulted his attorney about it and he advised that the taxes were a lien and that the contract was all right and that Jones would have to pay them. Cable saw McLaughlin and told him the contract was all right, and to bring it out to his house and his wife would sign it and pay the fifty dollars required by the contract to be paid at once. At that time the contract was just as Mr. Lucas had written it · and contained the provision that the seller should pay the special taxes, and was signed by Jones. McLaughlin, however, did not come that night. The next day Cable saw McLaughlin and asked him why he had not come. He answered: "Well, after you consulted a lawyer and you found out that the taxes are to be

paid, Mr. Jones don't want to pay them and he won't stand with the contract." Cable replied: "Mr. McLaughlin, he has already signed the contract and we have never talked about anything else but that he should pay the taxes. That is our contract and I insist on it. I have been to the expense of employing a lawyer and I insist on the contract." McLaughlin replied, "If that is the case I will bring it out to the house to-night."

McLaughlin says that after Mr. Lucas drew up the contract he took it to Jones and he signed it, and after he had the talk with Cable about the taxes, he spoke to Mr. Thornhill about it, and asked him if Jones would be liable for the taxes under the contract, and Mr. Thornhill said he would be. Then McLaughlin asked Thornhill what he should put in the contract to make it so Jones would not have to pay the taxes and Thornhill told him to write the words "which are now due and payable" after the word "property" in the clause of the contract above quoted, and McLaughlin then wrote those words in the contract. The clause would then read, "The seller also agrees to pay all state, county and municipal taxes, general and special, and all assessments now a lien on said property *which are now due and payable,*" etc. The special taxes were at that time a lien, but under the charter of the city were payable in four annual installments, and were, therefore, not then "due and payable." So that the contract as drawn by Mr. Lucas required Jones to pay the special taxes because they were then a lien, whereas the change made by McLaughlin after Jones signed the contract, did not require Jones to pay the special taxes because although they were a lien they were not then due and payable.

McLaughlin says he made a copy of the contract for Jones after he had signed it. Jones produced this copy and offered it in evidence, and it did not contain the words "which are now due and payable," but was an exact copy of the contract as Mr. Lucas had drawn it.

On the evening of the day on which Cable had in-

sisted on the contract being carried out, McLaughlin went to Cable's house as he had agreed, and took the contract. The evidence is overwhelming that Cable asked McLaughlin if the contract was just as it was drawn by Mr. Lucas, and McLaughlin answered, "Precisely." McLaughlin denies this, however. Cable first started to get a pen and ink to have the contract signed, but stopped and said, "May be we had better read the contract." When he read it and came to the clause McLaughlin had inserted, he stopped and told McLaughlin that was not in the contract as Mr. Lucas had drawn it. McLaughlin replied that it was. Cable then charged McLaughlin with trying to deceive him, and with having put that clause in the contract after Jones signed it, and demanded that it be erased. McLaughlin at first refused to do so. Cable then said that unless it was erased his wife would not sign it, and that he would hold McLaughlin responsible for the trouble he had been put to in the matter. McLaughlin then said he would erase it, and did so, and Mrs. Cable signed the contract and the fifty dollars was paid to him, and he left. McLaughlin says he was coerced into erasing it, not by any demonstration of force, but because Cable said that if he would not do so there would be trouble "right now," and he did not want any trouble.

Under the terms of the contract the seller had ten days to furnish an abstract of title. When this was not done, Cable called on McLaughlin and asked him why it had not been done. McLaughlin replied that Jones would not pay the special taxes, and that Jones said the erasure of the addition to the contract "killed the contract." Thereafter, Cable tendered Jones the four hundred dollars, balance of the purchase money, and demanded a deed. Jones refused to accept the money or to make the deed. Hence this suit. The chancellor found for the plaintiff, and that McLaughlin had been guilty of a spoliation of the contract after Jones signed it, and decreed specific performance.

## I.

The facts in this case compressed into a small compass are clearly that Jones wanted to sell the land at five hundred dollars. McLaughlin wanted a commission for selling, so he advertised it at six hundred. Cable offered four hundred dollars, and McLaughlin reported the offer to Jones, and he said he would take four hundred and twenty-five dollars, and McLaughlin could have all he could get over that sum. McLaughlin then offered it to Cable at four hundred and fifty dollars, and Cable accepted the offer. McLaughlin drew up a contract of sale, which Cable did not think sufficiently covered the payment of taxes by the seller. So Cable and McLaughlin went to the office of Mr. Lucas, and he drew up the contract sued on, by using a printed blank that McLaughlin furnished and making the necessary changes. This contract required Jones to pay all taxes that were a lien on the property. All parties knew that some public improvements had been made, and Cable asked McLaughlin if they had been paid for. He replied that he thought that they had been, but if not they would be paid. McLaughlin took the contract to Jones and he signed it. He then took it to Cable, who still expressed doubts whether the contract was explicit enough on the question of the taxes and asked to have the matter laid over until the next day, which was done. McLaughlin did not come to Cable's house the next day, and when Cable went to him to find the reason, McLaughlin said Jones would not pay the taxes. Cable insisted upon the contract being carried out and McLaughlin promised to come to his house that night and have it signed. Then McLaughlin consulted Thornhill about it and upon his advice that Jones would be liable for the taxes under the contract, and upon his advice as to what was necessary to do to make Cable liable for the taxes, McLaughlin inserted the words "which are now due and payable" in the contract. He did this without

consulting Jones or any one else in interest. When he took the contract to Cable's house, in response to Cable's inquiry if the contract was just as Lucas had drawn it, McLaughlin answered, "Precisely." Cable had misgivings, however, and read it, and discovered the spoliation, and charged McLaughlin with having changed it. McLaughlin still insisted that it was just as Lucas had drawn it. Cable then charged McLaughlin with trying to deceive him and with having changed the contract after Jones had signed it, and demanded that the addition made by McLaughlin be erased. At first McLaughlin refused to do so. But upon Cable's telling him that he would hold him responsible for the trouble and expense he had been put to, McLaughlin erased the words he had added, the money was paid, and the contract was signed.

The whole controversy is as to who shall pay the special tax. The record does not clearly show how much that amounted to. There is no room for doubt that the agreement was that the purchaser was to get a clear title and that the seller should pay the special taxes, if they had not already been paid. The contract as drawn by Mr. Lucas and as agreed to by Cable and McLaughlin and as signed by Jones, expressly so provided. The change was made by McLaughlin after Jones signed it, and without consultation with him, and McLaughlin's subsequent conduct clearly shows that he intended to deceive and trick Cable, and his conduct when his fraud was discovered, and his lame pretense that he eliminated the fraud by reason of Cable's coercion, conclusively establish that the chancellor was right in rejecting his testimony and in finding for the plaintiff.

In the face of all this the defendant invokes what was said by this court in Kelly v. Thuey, 143 Mo. 1. c. 434: "Hitherto we have tolerated no alteration in the contract; and we have always regarded and still regard any change on the face of the paper, as a nullifying alteration. By thus holding we intend to make the

payees or obligees of money-bearing or title-bearing obligations honest, whether that disposition accords with their natural inclinations or not. Of course, by these remarks we do not refer to cases of spoliation by a stranger, nor to filling blanks purposely left to be filled or authorized to be filled." That rule is wise and wholesome, but as McLaughlin was the spoliator it does not lie in the mouth of the defendant to ask that the rule be enforced as a shield to his wrong.

The remedy of specific performance lies within the sound judicial discretion of the chancellor. [Paris v. Haley, 61 Mo. 453; Veth v. Gierth, 92 Mo. 97; Pomeroy v. Fullerton, 131 Mo. 581.] The contract sought to be enforced must be certain, definite and capable of being performed. [Mastin v. Halley, 61 Mo. 196; Mastin v. Grimes, 88 Mo. 478; In re Ferguson's Estate, 124 Mo. 574; Warner v. Castello, 109 Mo. 344; Underwood v. Underwood, 48 Mo. 527; Cherbonnier v. Cherbonnier, 108 Mo. 252.]

The contract in this case measures up to the full requirements of the rule, and the finding of the chancellor is the only finding that the evidence warrants.

The judment of the circuit court is affirmed. All concur.