## NORBORN A. MITCHELL v. JULIA H. MITCHELL et al., Appellants.

### Division One, November 22, 1905.

1. **APPELLATE PRACTICE: Defective Abstract: Examination of Transcript.** The appellate court will not in an equity case look beyond the printed abstract to the full transcript to ascertain the true facts in judgment.

2. ———: ———: **Index.** The abstract must contain an index.

3. ———: ———: **Affirmance of Judgment.** Where no intelligent understanding of the case can be had or any intelligent discussion of the questions raised can be made, from the abstract filed in this court, the judgment will be affirmed, although from the meager evidence set out in what purports to be an abstract that judgment may appear to be wrong.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*Wm. Wehrenbrecht* for appellants.

MARSHALL, J.—This is a bill in equity for the specific performance of an alleged contract to convey certain real estate amounting to eighty acres in Oregon county, Missouri. There was a decree for the plaintiff and the defendants appealed.

The abstract of the record prepared by appellants is so meager as to convey a very imperfect idea of either the pleadings or evidence upon which the trial court rendered judgment. The abstract shows on its face that it does not attempt to make a fair statement of the evidence adduced, and in respect to matters essentially pertinent and material to the determination of the case, refers to the transcript without attempting in any manner to state even the substance of the mat-

ters referred to. Letters which are said to have an important and decisive bearing upon the controversy are referred to, but not reproduced, abstracted or even their substance stated. If only the facts stated in the abstract of the record appeared to the trial court, it is inconceivable how any lawyer would have undertaken to maintain an action of this character based upon such facts, and it is likewise inconceivable how any court could have entered a decree in favor of the plaintiff upon such facts. The plaintiffs have filed no counter abstract, statement or brief, hence but two courses are open to this court, one, to affirm the judgment for failure to comply with the rules of the court and furnish the court with such an abstract as those rules require, and, the other, to undertake to review and pass upon the correctness of the judgment of the learned trial judge with only such an unsatisfactory and incomplete abstract of the record and showing of the facts in judgment, as is presented in this case, for it is not the practice of this court to look beyond the abstract of the record to the full transcript to ascertain the true facts and thus make up an abstract of the record and a statement of the case for itself.

The case is here upon what purports to be a complete transcript. In such cases rule 12 of this court requires the plaintiff to prepare, serve on the respondent, and file in this court an abstract of the record. Rule 13 requires that such an abstract "shall have a complete index at the end thereof, and shall set forth so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for decision. Where there is no question made over the pleadings, or over deeds or other documentary evidence, it shall be sufficient to set out the substance of such pleadings or documentary evidence. The evidence of witnesses shall be stated in a narrative form except when the questions and answers are necessary to a complete understanding of the evidence," etc.

In Garrett v. Mining Co., 111 Mo. 279, and in Murrell v. McGuigan, 148 Mo. 334, this court held that an index is as imperatively required under the rule as the abstract itself, and enforced the rule because no index accompanied the abstract. The abstract of the record in this case contains no index whatever.

In Brand v. Cannon (118 Mo. l. c. 597), it was held that the onus of preparing a proper abstract was upon the appellant, and that the requirements of the rule were not satisfied by the filing of an insufficient or garbled abstract, and further that the appellant could not shift the burden upon the respondent to piece out an improper abstract by filing a counter abstract.

In Bradley v. Bradley, 119 Mo. 58, the rule was held to require the abstract to set out the entire evidence, questions and answers, of each witness, where there was a conflict in the testimony and where this court was asked to look into and determine the facts and to decide the case upon the questions of fact.

In Reed, Admr., v. Peck, 163 Mo. l. c. 336, it was said: " 'It will not do to allow plaintiff's counsel to cull over the record and present such evidence as they may think pertinent and material; the entire evidence must be set out, so that this court may, for itself, determine its materiality and probative force.' So in Davis v. Vories, 141 Mo. 234, it was held that this court will not pass upon the insufficiency of the evidence where it is not fully set out in the record." In Whitehead v. Railroad, 176 Mo. l. c. 479, it was said: "Moreover, it often happens that a fragment of testimony standing alone appears to be incompetent, or was erroneously excluded, but when viewed in the light of all the testimony and the rulings of the court it is entirely proper or at least harmless. We have been very conservative in the enforcement of these rules, but a number of cases will show that when the plaintiff disregards the rule to such an extent that his so-called abstract will necessitate the preparation of one by this court, or the burden and cost

of so doing will be entailed on the respondent, we have enforced them by dismissing the appeal.''

The same rule has been enforced and observed in Halstead v. Stone, 147 Mo. 649; McCullough v. Dewitt, 163 Mo. 306; Smith v. Baer, 166 Mo. 1. c. 404; Western Storage Co. v. Glasner, 150 Mo. 427; Williams v. Stroub, 168 Mo. 1. c. 355; and Vandeventer v. Goss, 190 Mo. 239.

As far as can be gleaned from the abstract of the record filed in this case, the petition charges that the plaintiff and one C. W. Mitchell entered into an oral agreement on the ——— day of November, 1892, whereby C. W. Mitchell agreed to sell and convey to the plaintiff the land in suit, not describing it in any manner whatever, upon the following terms: ''That if the plaintiff would move his family to the premises known as the Boze Mill property, then belonging to the said C. W. Mitchell, and take charge of the same, together with all other property, and manage the affairs of said C. W. Mitchell in his business, that he, the said C. W. Mitchell, would convey to him, the said plaintiff, the above described land. That plaintiff has fully complied with all the terms, and in reliance upon the same, plaintiff built dwelling houses, cleared and fenced lands, etc., all to the value of $750, but that C. W. Mitchell neglected to convey.''

The prayer of the petition is that the contract be specifically enforced. The action is against Julia H. Mitchell, Henry C. Mitchell et al., and Henry C. Mitchell, administrator. C. W. Mitchell, with whom the contract is alleged to have been made, is not a party to this action, nor is there any averment in the petition, as stated in the abstract of the record, connecting the defendants in any manner with C. W. Mitchell, or explaining why these defendants, instead of the contracting parties, have been sued. The abstract then states that the defendants' answer is a general denial.

Turning now to the abstract of the testimony it

appears that the plaintiff and C. W. Mitchell were brothers and that certain of the witnesses were the widow and children of C. W. Mitchell. The abstract of the testimony adduced on the part of the plaintiff covers five pages, and consists of the testimony of James Jones, who was county assessor from 1896 to1900, and is to the effect that C. W. Mitchell told the assessor on one occasion during that period, to assess eighty acres to the plaintiff, saying he intended to make a deed for him therefor; that the assessor spoke to the plaintiff about it on two occasions and both times the plaintiff refused to allow the land to be assessed to him. The abstract further contains what purports to be the testimony of one C. E. Austin to the effect that in September, 1900, he had a conversation with C. W. Mitchell in which the latter said he intended to make a deed to the plaintiff for eighty acres of land, and that he said he had not made a deed to the plaintiff because he was afraid he would sell the land and move off. Wade Heiskel said he had talked with C. W. Mitchell several times, but could not remember the time or place of the conversation, and that said C. W. Mitchell said he desired to make a deed to the plaintiff and that he, the witness, got an idea that C. W. Mitchell was going to make him a deed, and the reason he did not make the deed at that time was that he was afraid the plaintiff would move off and sell the land, and he wanted the plaintiff to stay there and have a home for his family. The witness had been employed by C. W. Mitchell to make a survey of all of his land, including the eighty acres, but no separate survey of the eighty acres was ordered or made.

T. S. Coleman testified that C. W. Mitchell told him to pick out a dwelling site on the eighty acres that would be a healthy location; that he wanted to give the plaintiff a healthy location, as the plaintiff was not used to the country; that C. W. Mitchell told him he had agreed to let plaintiff have eighty acres.

Bailer Mitchell, a son of the plaintiff, testified that he had a conversation with C. W. Mitchell, his uncle, in which he asked him how "we was to pay for the land and he said we was to work and clear the land down to the river to pay for it. We was to work and go halves on stock and he to furnish the feed." But when asked what C. W. Mitchell said were the terms of the contract between him and the plaintiff the witness answered: "I never asked him about that." The witness further testified that part of the time his father got half of the proceeds of the cattle.

This is the substance of the testimony adduced on the part of the plaintiff as shown by the abstract of the record. The abstract of the record contains four and one-half pages of testimony said to have been introduced by the defendants, and is to the effect that C. W. Mitchell owned land in Oregon county, the extent thereof is not stated, which included eighty acres not described; that at some time, not stated, C. W. Mitchell placed the plaintiff in charge of the land, left with him four horses, two mules, some cattle and seventy-five or a hundred head of hogs, and that the plaintiff was to manage the place and receive half of the net increase of the cattle, and perhaps one half of the profits arising from the cultivation of the land; that for the year ending December 31, 1902, the plaintiff paid Henry C. Mitchell, a son of C. W. Mitchell, the sum of $65 as rent for all the land owned by C. W. Mitchell, in section 9, which included the land in controversy.

The abstract of the record further contains a quotation from a letter dated March 2, 1896, from the plaintiff, presumably to C. W. Mitchell, although it is not stated to whom the letter was addressed, which excerpt proposes to do certain clearing for $6.50 an acre, haul the logs to the mill, put in posts and build fences and let it all go to pay for the eighty acres the plaintiff was living on, so as to get a home for the plaintiff. The abstract of the record refers to letters marked ex-

hibits C and D, said to be contained in the transcript, but no statement is made in the abstract as to who wrote the letters or to whom they were sent.

This is the substance of the abstract of the record, and it is manifest that upon such a showing it is impossible for this court to intelligently review the action of the trial court. There is no statement in the abstract of the record that any bill of exceptions was ever filed in the cause. If full force be given to all that is said in the petition and the evidence adduced for the plaintiff as set forth in the abstract of the record, it is clear that under the rules laid down by this court in Goodin v. Goodin, 172 Mo. 40, and Gibbs v. Whitwell, 164 Mo. 387, and the cases cited in those decisions, no case entitling the plaintiff to specific performance has been made out.

But the plaintiff has secured judgment in his favor in the circuit court, and all reasonable presumptions must be indulged as to the correctness of that judgment. The burden is upon the defendants to show to this court, in the manner pointed out by law and the rules of this court, that the judgment complained of is not a righteous judgment. Upon such an abstract of the record as has been filed in this case no intelligent discussion of the question can be had by this court. If the judgment of the circuit court is wrong the defendants have failed to demonstrate it to this court or to put this court in a position where it can make that fact apparent. Under the circumstances this court must defer to the finding of the chancellor.

The judgment of the circuit court is therefore affirmed.

All concur.